No. 26-60123

**IN THE UNITED STATES COURT OF APPEALS, FIFTH CIRCUIT**

TRACY MILLER ARNOLD,

Plaintiff-Appellant,

**v.**

CITY OF GUNTOWN, MISSISSIPPI; ANDREW STUART,
individually and in his official capacity,

Defendants-Appellees.

**On Appeal from the United States District Court**
**for the Northern District of Mississippi**
**Case No. 1:25-cv-24**
**Honorable Glen H. Davidson, District Judge**

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1, Appellant Tracy Miller Arnold certifies that the following persons and entities have an interest in the outcome of this case:

1. Tracy Miller Arnold, Plaintiff-Appellant (pro se)
2. City of Guntown, Mississippi, Defendant-Appellee
3. Andrew Stuart, individually and in his official capacity, Defendant-Appellee
4. G. Todd Butler, Esq., Phelps Dunbar LLP, counsel for Appellees
5. Sonya Dickson, Esq., Phelps Dunbar LLP, counsel for Appellees

# Table of Contents

CERTIFICATE OF INTERESTED PERSONS......................................i
TABLE OF AUTHORITIES..................................................................iii
JURISDICTIONAL STATEMENT.........................................................1
STATEMENT OF ISSUES PRESENTED................................................1
STATEMENT OF THE CASE................................................................4
A. Procedural History.........................................................................4
B. Statement Of Facts..........................................................................6
SUMMARY OF ARGUMENT...........................................................11
ARGUMENT.....................................................................................16
Standard Of Review..........................................................................16
I. THE DISTRICT COURT VIOLATED McGRUDER BY EVALUATING ONLY THE FORMAL COMPLAINT......................18
II. THE DISTRICT COURT GRANTED ABSOLUTE IMMUNITY WITHOUT THE REQUIRED FUNCTIONAL ANALYSIS.................23
III. STUART IS INDIVIDUALLY LIABLE ON THREE INDEPENDENT THEORIES, AND QUALIFIED IMMUNITY DOES NOT BAR THOSE CLAIMS AT THE PLEADING STAGE................27
IV. THE MONELL CLAIMS SURVIVE ON FOUR INDEPENDENT PATHS...................................................................................................33
V. THE LEE COUNTY COURT'S CONSTITUTIONAL FINDINGS HAVE PRECLUSIVE EFFECT UNDER 28 U.S.C. § 1738..................45
VI. THE STATUTE OF LIMITATIONS DEFENSE FAILS: ARNOLD'S CLAIMS DID NOT ACCRUE UNTIL THE JULY 5, 2023 DISMISSAL ....................................................................................................49
VII. DISMISSAL WITH PREJUDICE WITHOUT LEAVE TO AMEND WAS ERROR...........................................................................51
VIII. THE MAGISTRATE'S DENIAL OF THE MOTION TO STRIKE AFFIRMATIVE DEFENSES WAS CONTRARY TO *WOODFIELD*..55
CONCLUSION...................................................................................60
CERTIFICATE OF SERVICE...............................................................63
CERTIFICATE OF COMPLIANCE........................................................64

# TABLE OF AUTHORITIES

**Cases**

Allen v. McCurry, 449 U.S. 90 (1980) .................. 2, 14, 18, 25, 26, 46, 47
Ashcroft v. Iqbal, 556 U.S. 662 (2009) ................................................ 19
Barker v. Wingo, 407 U.S. 514 (1972) ................................................ 48
Bazrowx v. Scott, 136 F.3d 1053 (5th Cir. 1998) (per curiam) ............... 53
Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) .................................. 17
Blackledge v. Perry, 417 U.S. 21 (1974) .......................................... 13, 31
Buckley v. Fitzsimmons, 509 U.S. 259 (1993) ....... 2, 12, 24, 25, 26, 28, 62
Burns v. Reed, 500 U.S. 478 (1991) ........................................... 12, 25, 26
Caissie v. State, 254 So. 3d 849 (Miss. Ct. App. 2018) ...... 7, 13, 32, 33, 51
Calhoun v. Hargrove, 312 F.3d 730 (5th Cir. 2002) .............................. 20
Carswell v. Camp, 54 F.4th 307 (5th Cir. 2022) ......................... 13, 29, 62
City of Canton v. Harris, 489 U.S. 378 (1989) ........................ 2, 14, 35, 47
City of St. Louis v. Praprotnik, 485 U.S. 112 (1988) .............. 3, 14, 41, 62
Cole v. Arkansas, 333 U.S. 196 (1948) ................................................ 32
Felder v. Casey, 487 U.S. 131 (1988) ........................................ 16, 57, 62
FTC v. American Municipal Services Corp., No. 4:17-cv-00168 (E.D. Tex.) ........................................................................ 9, 18, 36, 44, 54
Gonzalez v. Trevino, 602 U.S. 653 (2024) ............................................ 31
Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305 (5th Cir. 2002) ..................................................................... 20, 53
Haines v. Kerner, 404 U.S. 519 (1972) ........................................... 17, 53
Harrison v. Chandler-Sampson Ins., Inc., 891 So. 2d 224 (Miss. 2005) .. 47
Hartman v. Moore, 547 U.S. 250 (2006) ....................................... 13, 30
Heck v. Humphrey, 512 U.S. 477 (1994) ............................................................................................3, 14, 15, 38, 39, 45, 49, 50, 51, 52, 58, 59, 60
Hughes v. Tobacco Inst., 278 F.3d 417 (5th Cir. 2001) ........................ 17
Imbler v. Pachtman, 424 U.S. 409 (1976) ............................................ 24
Manuel v. City of Joliet, 580 U.S. 357 (2017) ...................................... 31
McGruder v. Phelps, 608 F.2d 1023 (5th Cir. 1979) ............................................................................. 1, 5, 6, 11, 12, 16, 18, 19, 20, 23, 24, 61, 62
Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75 (1984) ........ 47

Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) .................................... .......................................... 2, 11, 13, 14, 24, 28, 34, 38, 39, 40, 46, 49, 61
Monroe v. Pape, 365 U.S. 167 (1961) ........................................ 16, 58, 62
Moore v. City of Grand Prairie, 2013 WL 1174457 (N.D. Tex. 2013) ......... ................................................................................ 13, 30, 32, 33
Nieves v. Bartlett, 587 U.S. 391 (2019) ................................................ 30
Olivier v. City of Brandon, 607 U.S. ___ (2026) ..................................... 52
Owen v. City of Independence, 445 U.S. 622 (1980) ............. 16, 50, 57, 62
Owens v. Okure, 488 U.S. 235 (1989) .................................................... 50
Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979) ............................. 47
Patsy v. Board of Regents, 457 U.S. 496 (1982) .......................... 16, 58, 62
Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) ... 3, 14, 39, 40, 54, 62
Ricks v. City of Winona, 858 F. Supp. 2d 682 (N.D. Miss. 2012) ........... 50
Salazar v. Molina, 37 F.4th 278 (5th Cir. 2022) ..................................... 29
Stripling v. Jordan Prod. Co., 234 F.3d 863 (5th Cir. 2000) .................... 53
Thompson v. Clark, 596 U.S. 36 (2022) ...................... 3, 13, 15, 31, 51, 52
Vann v. City of Southaven, 884 F.3d 307 (5th Cir. 2018) ................. 29, 63
Wallace v. Kato, 549 U.S. 384 (2007) .................................................... 51
Webster v. City of Houston, 735 F.2d 838 (5th Cir. 1984) (en banc) ............ ......................................................................... 3, 14, 42, 45, 54, 62
White v. Pauly, 580 U.S. 73 (2017) ....................................................... 33
Woodfield v. Bowman, 193 F.3d 354 (5th Cir. 1999) .................................. .............................................................. 4, 15, 16, 19, 56, 57, 59, 62, 63

**Statutes**

28 U.S.C. § 1291 ........................................................................... 1
28 U.S.C. § 1331 ........................................................................... 1
28 U.S.C. § 1343 ........................................................................... 1
28 U.S.C. § 1738 .................................. 3, 6, 14, 15, 16, 19, 46, 47, 50, 62
42 U.S.C. § 1983 ........... 1, 4, 11, 15, 16, 19, 39, 47, 50, 51, 57, 58, 59, 60
Miss. Code Ann. § 15-1-49 ................................................................ 50
Miss. Code Ann. § 21-3-5 .................................................................. 34
Miss. Code Ann. § 21-17-1(6) ............................................................. 9
Miss. Code Ann. § 21-23-3 ................................................................ 34
Miss. Code Ann. § 21-23-7(3) ............................................................ 32

Miss. Code Ann. § 99-37-7 ........................................................................ 54

**Rules**

Fed. R. App. P. 4(a) ........................................................................ 1
Fed. R. App. P. 32(a) ........................................................................ 65
Fed. R. Civ. P. 12(c) ........................................................................ 1, 2, 5, 6, 9, 12, 14, 17, 19, 20, 21, 23, 24, 29, 32, 33, 34, 37, 38, 51, 55, 60, 62
Fed. R. Civ. P. 15(a) ........................................................................ 16, 61
Fed. R. Civ. P. 56(c) ........................................................................ 23
Fed. R. Evid. 201 ........................................................................ 17, 26
5th Cir. R. 28.2.1 ........................................................................ i

**Other Authorities**

Miss. Att'y Gen. Op. No. 2014-00090, 2014 WL 1513511 (Mar. 21, 2014) ........................................................................ 18, 25
Miss. Att'y Gen. Op. No. 2015-00323, 2015 WL 6121930 (Sept. 18, 2015) ........................................................................ 18, 25, 40, 54
Miss. Att'y Gen. Op., 2024 WL 4357291 (June 24, 2024) ...................... 18

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Appellant's claims arise under 42 U.S.C. § 1983 and the First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution.

The district court entered final judgment dismissing all claims with prejudice by Order dated February 2, 2026. This Court has jurisdiction under 28 U.S.C. § 1291 as an appeal from a final decision of a district court.

The notice of appeal was filed on February 26, 2026. The appeal is timely under Federal Rule of Appellate Procedure 4(a).

## STATEMENT OF ISSUES PRESENTED

1. Whether the district court violated *McGruder v. Phelps*, 608 F.2d 1023 (5th Cir. 1979), by dismissing a pro se plaintiff's § 1983 complaint without considering her Partial Summary Judgment and other papers (filed before Defendants' Rule 12(c) motion, raised directly in her opposition, and preserved in the notice of appeal) as amendments to the complaint.

2. Whether the district court misapplied *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), by granting absolute immunity without performing the required act-by-act functional analysis, where Arnold's complaint characterizes each challenged act as an administrative or city-attorney function rather than judicial advocacy, and where Stuart simultaneously held the offices of City Prosecutor, City Attorney, and legal counsel to the Board of Aldermen.
3. Whether the district court erred in dismissing Arnold's individual claims against Stuart for First Amendment retaliatory prosecution, malicious prosecution, and vindictive prosecution, where the uncontroverted record establishes escalating retaliatory conduct in direct response to Arnold's exercise of her appeal and petition rights, and where the court imported a summary judgment qualified immunity burden into a Rule 12(c) ruling.
4. Whether the district court erred in dismissing the Monell claims where (a) the Board of Aldermen, which the court found to be the final policymaker, received nine consecutive years of audit warnings identifying the exact deficiency that caused the violations (*City of Canton v. Harris*); (b) Stuart held final policymaking authority in the specific domain of municipal enforcement and court administration

decisions (*Pembaur v. City of Cincinnati*); and (c) the City ratified the unconstitutional conduct when the 2023 constitutional petition was served on Stuart and the Mayor and the City took no corrective action (*City of St. Louis v. Praprotnik*); and (d) the persistent, widespread practice of the City's employees operating without supervision constituted a custom fairly representing municipal policy (*Webster v. City of Houston*).

5. Whether 28 U.S.C. § 1738 required the district court to give preclusive effect to the Lee County Court's June 8, 2023 Memorandum Opinion, which adjudicated after a contested proceeding that Arnold's constitutional rights to due process and to notice of the charges were violated.

6. Whether the statute of limitations defense was properly applied where Appellant's retaliatory and malicious prosecution claims did not accrue before the July 5, 2023 favorable termination, an element of those claims under *Thompson v. Clark*, 596 U.S. 36 (2022), and where Defendants' own *Heck v. Humphrey* affirmative defense fails because the municipal conviction it invokes was eliminated by trial de novo and by favorable termination.

7. Whether dismissal with prejudice, without affording a pro se plaintiff any opportunity to amend, was proper where the record and public records subject to judicial notice demonstrate that amendment would not be futile, and whether the district court's failure to address Arnold's separately-pled request for equitable and injunctive relief was independent error.
8. Whether the Magistrate Judge's denial of Arnold's Motion to Strike Affirmative Defenses was contrary to law under *Woodfield v. Bowman*, 193 F.3d 354 (5th Cir. 1999), and whether the district court erred in overruling Arnold's Rule 72(a) objection to that ruling.

## STATEMENT OF THE CASE

### A. Procedural History

Tracy Miller Arnold, proceeding pro se, filed this civil rights action on February 18, 2025, in the United States District Court for the Northern District of Mississippi, asserting violations of the First, Fourth, Sixth, and Fourteenth Amendments through 42 U.S.C. § 1983 against the City of Guntown, Mississippi, and Andrew Stuart, the City's Prosecutor/Attorney, individually and in his official capacity. ROA.6.

Before Defendants filed any dispositive motion, Arnold filed Motions for Separate Counsel, Motion to Strike Affirmative Defenses, and Motion for Partial Summary Judgment supported by exhibits including but not limited to court transcripts, the Lee County Court's constitutional findings, nine consecutive annual audit reports, and affidavits identifying specific admissions by City personnel. ROA.177.

Defendants response to Arnold's Partial Summary Judgment did not contain any records or exhibits controverting Arnold's motion. Defendants FRCP 56 response instead directed the court to consider their Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c) without identifying the rule that permits the conversion of a rule 56 into a rule 12(c). ROA.499.

Arnold opposed the Rule 12(c) motion, explicitly invoking *McGruder v. Phelps* and arguing that the district court was required to treat her Partial Summary Judgment and other papers as amendments to the complaint. ROA.531.

The district court denied Arnold's Partial Summary Judgment motion ROA.604 and granted Defendants' Rule 12(c) motion, dismissing all claims with prejudice by February 2, 2026. ROA.604. The Order did not address *McGruder*, did not discuss the Partial Summary Judgment and other papers,

did not analyze the 12(c) qualified immunity standard as distinct from the summary judgment standard, did not address 28 U.S.C. § 1738, and did not offer leave to amend. Instead, the district court cited a case controlling that represented parties waive amendment opportunity. Arnold's complaint also requested equitable relief which was not addressed by the district court.

Arnold timely filed a Notice of Appeal. ROA.605.

## B. Statement of Facts

**The Municipal Court Proceedings (2017).** In March 2017, the City of Guntown, through Andrew Stuart, initiated a criminal traffic prosecution against Tracy Arnold in Guntown Municipal Court. ROA.8. Following a municipal hearing on June 8, 2017, and trial on September 14, 2017, Arnold was convicted of void traffic violations and fined. The City did not seek jail time in municipal court. ROA.8, 208-209 (Tr. at 25:5-8).

In 2017 leading up to Municipal Trial, City personnel stated they would "need to ask Andrew first" before accepting Arnold's motions for the municipal criminal proceeding. ROA.391 (Bill Arnold Aff.)

**The Trial De Novo and the April 2018 Constitutional Ruling.** Arnold timely appealed to the Lee County Court, Mississippi, pursuant to her right to a trial de novo. Under Mississippi law, a trial de novo appeal divests the

lower court of jurisdiction and transfers the case entirely to the county court, as if there had never been a trial in the first instance. *Caissie v. State*, 254 So. 3d 849, 856 (Miss. Ct. App. 2018). From the date of Arnold's appeal in October 2017, the Guntown Municipal Court lost all jurisdiction over the matter.

On January 10, 2018, in the Lee County Courthouse conference room Arnold stated to Andrew Stuart her intent to pursue the matter to the United States Supreme Court if necessary. Following that statement in open court, Stuart, for the first time in his five years in that position and in this case, requested that if Arnold were convicted, she be sentenced to jail. ROA.353 (Tr. at 41:17-22) (Stuart: "This is the first time I have ever come into this court in five years of being a prosecutor in Guntown and asked that if someone is convicted that they go to jail.")

At the April 11, 2018 hearing, the Lee County Court examined the charging documents and found them constitutionally deficient. The Court ordered Guntown to amend the complaints to provide adequate constitutional notice of the charges and the nature of the penalties. ROA.38. The City never complied with that order. ROA.39.

**The Nine-Year Audit Record.** From 2015 through 2023, the City's independent auditors issued identical findings each year, each year

classifying as a "SIGNIFICANT DEFICIENCY" that "a single employee is in charge of fine collections, docket entry, and warrant issuances." ROA.396, 400, 405, 411, 416, 421, 426, 432, 438 (2015-2023 audit findings) These annual audit reports were presented each year to the Mayor and the Board of Aldermen. ROA.394-440. The Board responded to a different part of the same finding but no corrective action across nine consecutive years for the fine collections, docket entry, and warrant issuances.

**Enforcement During the Jurisdictional Void (2022-2023).** While Arnold's case remained pending on trial de novo, and the Municipal Court had no jurisdiction, the City initiated enforcement action through a private collection agency, American Municipal Services Corporation (AMS), with which the City contracts under Miss. Code Ann. § 21-17-1(6) to collect delinquent fines. ROA.26-29.

- July 6, 2022: AMS delivered a first collection and arrest warrant notice to Arnold's Tennessee home. Arnold immediately contacted the City and was directed to Stuart. ROA.9, 392.
- October 6, 2022: A second AMS notice arrived. Arnold again contacted the City and was directed to Stuart. ROA.10.

- January 9, 2023: A third AMS notice arrived. ROA.10.
- April 13, 2023: A fourth, escalated AMS notice arrived. ROA.10.

At the time AMS sent these notices, AMS was operating under a federal permanent injunction. In *FTC v. American Municipal Services Corp.*, No. 4:17-cv-00168 (E.D. Tex.), the United States District Court permanently enjoined AMS from misrepresenting that arrest warrants have been issued and from threatening arrest without proper legal authority, and required AMS to maintain warrant documentation for five years. Arnold placed that injunction before the district court in her opposition to Defendants' Rule 12(c) motion. ROA.531 (Arnold's 12(c) Opp.) The arrest-warrant threats AMS directed at Arnold concerned the very warrants the Lee County Court later found jurisdictionless.

The City admitted to Arnold in 2022 that it had "no method for tracking whether a case was on appeal." ROA.9, 392 (Tracy Arnold Aff.)

**The 2023 State Court Constitutional Findings and Favorable Termination.** Arnold filed a Petition to Dismiss for Lack of Prosecution and Failure to Provide Due Process on April 13, 2023, which was served on Andrew Stuart and the city mayor. ROA.385. On May 24, 2023, rather than addressing the constitutional deficiencies or dismissing the case, Stuart

filed a Motion to Set the Matter for Trial seeking up to eighteen months of imprisonment and stating knowing no reason trial could not proceed as soon as the courts calendar permitted. ROA.31-32.

On June 8, 2023, the Lee County Court issued a Memorandum Opinion finding that "the delay in this matter violated the Defendant's Constitutional right to Due Process" and that "the Defendant was not properly notified of her charges and thus her due process rights are at issue." ROA.34, 38 (Spencer Mem. Op., June 8, 2023) The court further found that the arrest warrants issued against Arnold after her October 2017 trial de novo appeal were void and should be immediately stricken, as the Municipal Court had no jurisdiction to issue or maintain them, and that the enforcement actions that followed should not have occurred. ROA.34. The Court gave the City ten days to demonstrate compliance with the April 2018 order, and served notice of that directive directly on Andrew Stuart, as attorney for the City of Guntown, and on Tracy Arnold. ROA.41. The City filed no response. ROA.43. On July 5, 2023, the Lee County Court dismissed all charges. ROA.43. The county court docket reflects no motion for reconsideration and no appeal. ROA.101-102.

**The Federal Complaint.** Arnold filed this federal complaint on February 18, 2025, nineteen months after the July 5, 2023 dismissal. The complaint asserted eight counts under 42 U.S.C. § 1983, denominated as Sections 5.1 through 5.8: First Amendment retaliation (§5.1); vindictive prosecution (§5.2); procedural and substantive due process (§5.3); Fourth Amendment violations from warrants issued without jurisdiction (§5.4); malicious prosecution (§5.5); speedy trial under the Sixth Amendment (§5.6); notice of charges under the Sixth Amendment (§5.7); and Monell municipal liability (§5.8).[1] ROA.6.

## SUMMARY OF ARGUMENT

The district court dismissed every claim by adopting Defendants' characterizations rather than examining the record before it and construing all facts most favorable to the Plaintiff. The dismissal, and the Magistrate's denial of Arnold's Motion to Strike Affirmative Defenses, rest on eight independently reversible errors.

1 The complaint's section numbering proceeds from Section 5 (Claims §§5.1–5.8) covers claims 1 through 9 missing number 6. This pro se numbering gap is a drafting artifact that does not affect the substance or identifiability of any claim. Under *McGruder*, 608 F.2d at 1025, pro se filings are construed liberally; the substance of each of the eight claims is stated with specificity.

**First**, the court evaluated the formal complaint as if Arnold's other filings did not exist, violating *McGruder v. Phelps*, 608 F.2d 1023 (5th Cir. 1979). Those papers, filed before Defendants' 12(c) motion and raised in Arnold's opposition, contained specific, non-conclusory facts cited to record evidence: a transcript in which the Stuart admitted an unprecedented jail request, nine years of audit reports establishing the Board's deliberate indifference, and the City's admission that it had no system to track cases on appeal. The *McGruder* argument was before the court for 237 days. The court never addressed it.

**Second**, the court granted Stuart absolute immunity with the conclusory phrase "squarely within," without performing the act-by-act functional analysis *Buckley v. Fitzsimmons* requires. The Defendants never even attempted to meet their *Burns v. Reed* burden of presenting a function by function justification for immunity for the court to consider. Immunity attaches to functions, not titles. Stuart's five-year administrative non-compliance with a court order, his failure to act correcting warrants and collection-agency enforcement, and his gatekeeping of municipal paperwork are not acts "intimately associated with the judicial phase of the criminal process."

**Third,** Stuart is individually liable on three independent theories that do not depend on Monell or on each other: First Amendment retaliatory prosecution (*Hartman v. Moore*), malicious prosecution (*Thompson v. Clark*), and vindictive prosecution (*Blackledge v. Perry*). The retaliation was specific and targeted: the escalation from no jail to jail to maximum jail tracked each point at which Arnold asserted a right. ROA.8, 353, 10, 378, 11, 31. The district court collapsed the pleading-stage qualified immunity inquiry into a summary judgment burden-shift, requiring Arnold to prove controlling authority rather than to plead facts. *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022). The state-law authorities Defendants raised in reply (*Caissie* and *Moore v. City of Grand Prairie*) cannot establish federal clearly established law and answer questions Arnold never raised.

**Fourth**, the Monell claims survive on four independent paths. Defendants argued, and the court agreed, that the Board of Aldermen is the City's final policymaker; that holding establishes *City of Canton v. Harris* deliberate indifference, because the Board received nine years of audit warnings identifying the precise deficiency that produced the violations. Independently, Stuart (whom Defendants themselves identified as a decision-maker in their 12(c) motion) held final policymaking authority in the

specific domain of prosecution and enforcement decisions under *Pembaur v. City of Cincinnati*. And the City ratified the unconstitutional conduct when Arnold's 2023 constitutional petition was served on Stuart and the Mayor and the City responded with escalation and inaction. *City of St. Louis v. Praprotnik*. Finally, based on the limited preliminary record of the facts so far, the Board, the city and Stuart give a reasonable inference of a custom and practice of no supervision concerning the municipal court and enforcement domains under *Webster v. City of Houston*.

**Fifth**, the constitutional violations at the core of some of Arnold's claims were already adjudicated in a contested state proceeding. Under 28 U.S.C. § 1738 and *Allen v. McCurry*, the Lee County Court's June 8, 2023 findings bind Defendants here. Arnold's case is *Heck v. Humphrey*'s mirror: just as *Heck* bars a plaintiff from relitigating an intact conviction through § 1983, § 1738 bars Defendants from relitigating final constitutional findings without first obtaining their reversal. They took no appeal. The findings stand. Defendants may contest only attribution and remedy, not whether violations occurred.

**Sixth**, the limitations defense fails. Arnold's retaliatory and malicious prosecution claims did not accrue until the July 5, 2023 favorable

termination, an element of those torts under *Thompson v. Clark*, placing the February 18, 2025 complaint within the three-year period. Defendants' own *Heck* affirmative defense fails because the municipal conviction it invokes was eliminated (**it did not even happen as a matter of Mississippi State law**) by trial de novo and by favorable termination.

**Seventh**, dismissal with prejudice without leave to amend was error. Arnold is a pro se plaintiff who never formally amended. The Partial Summary Judgment record, her other filings, and public records subject to judicial notice (including three Mississippi Attorney General opinions Stuart himself requested), demonstrate that amendment would not be futile.

**Eighth**, the Magistrate Judge's denial of Arnold's Motion to Strike Affirmative Defenses was contrary to law under *Woodfield v. Bowman*, 193 F.3d 354 (5th Cir. 1999). The Magistrate collapsed Rule 12(f)'s two-part inquiry into one, applying a universal minimum where *Woodfield* requires case-by-case analysis, and failed to ask whether binding precedent independently forecloses certain defenses regardless of pleading quality. Seven defenses are categorically unavailable: *Owen v. City of Independence* bars municipal immunity defenses as a matter of substantive § 1983 law; *Felder v. Casey* bars state procedural prerequisites in federal court; *Patsy v.*

*Board of Regents* bars exhaustion requirements; and *Monroe v. Pape* bars adequate-state-remedy defenses. Granting the Motion to Strike also carries a structural consequence that applies independent of Arnold's pro se status: if Defendants must re-answer with properly pleaded defenses, the case returns to active pleadings stage, and Arnold's corresponding opportunity to conform her complaint follows as a matter of course: whether under Rule 15(a)(1)(B) from the new responsive pleading or under Rule 15(a)(2) in the interest of justice on remand.

Because the record is uncontroverted and the dispositive questions are legal, this Court should reverse, and on the § 1738 and McGruder grounds may reverse outright rather than remand.

# ARGUMENT

## Standard of Review

This Court reviews a district court's grant of judgment on the pleadings under Rule 12(c) de novo. *Hughes v. Tobacco Institute*, 278 F.3d 417, 420 (5th Cir. 2001). All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *Id.* The same standard governs as under Rule 12(b)(6): dismissal is appropriate only

where the plaintiff has failed to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Pro se pleadings are "held to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

**Judicial notice.** This Court may take judicial notice under Federal Rule of Evidence 201 of public records whose accuracy cannot reasonably be questioned, at any stage of the proceeding, including for the first time on appeal. Fed. R. Evid. 201(d). The following are subject to judicial notice: (1) the Lee County Court docket in *City of Guntown v. Tracy Arnold*, including the June 8, 2023 Memorandum Opinion, the July 5, 2023 order of dismissal, and the absence of any appeal, motion for reconsideration, or other post-judgment challenge; (2) the permanent injunction in *FTC v. American Municipal Services Corp.*, No. 4:17-cv-00168 (E.D. Tex.); (3) the City of Guntown's annual independent audit reports for 2015 through 2023, public municipal records received by the Board of Aldermen; and (4) the three Mississippi Attorney General opinions requested by Stuart in his official capacities (Miss. Att'y Gen. Op. No. 2014-00090, 2014 WL 1513511 (Mar. 21, 2014); Miss. Att'y Gen. Op. No. 2015-00323, 2015 WL

6121930 (Sept. 18, 2015); and Miss. Att'y Gen. Op., 2024 WL 4357291 (June 24, 2024)), official opinions of the State's chief law officer issued through official channels and not subject to reasonable dispute. Judicial notice of these records establishes their existence and content; their legal consequences are addressed in the arguments below.

**Scope of de novo review.** Because the district court limited its review to the formal complaint and never applied *McGruder* to the full record, this Court does not merely review the district court's application of the correct standard; it applies the correct standard, to the complete record, in the first instance. Where the relevant facts are uncontroverted and only questions of law remain, this Court may reverse outright rather than remand. That is especially so as to the preclusion question under § 1738 (Argument V), which presents a pure question of law on a final, unappealed state judgment. This Court has the opportunity to also clarify the rule versus the exception of the holding in *Woodfield v. Bowman* and how *Woodfield* applies to a pro se.

## I. THE DISTRICT COURT VIOLATED McGRUDER BY EVALUATING ONLY THE FORMAL COMPLAINT

Arnold's formal complaint, standing alone, contains sufficient non-conclusory allegations to survive Rule 12(c): Stuart's unprecedented jail request made immediately after Arnold announced her intent to appeal to the Supreme Court; void enforcement proceedings taken while the county court held jurisdiction; and a five-year failure to comply with a constitutional order. These are specific, particularized acts, not the "threadbare recitals" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), warns against. The district court was required to accept them as true and assess whether, together, they stated a plausible § 1983 claim.

Beyond that threshold, this Circuit has long held that "in view of the liberality accorded to the pleadings of pro se petitioners," a district court "should have treated the materials filed by plaintiff, however denominated, as an amendment to his complaint or an addition in the nature of an amendment." *McGruder v. Phelps*, 608 F.2d 1023, 1025 (5th Cir. 1979). Rule 12(c) motions are evaluated under the same standard as Rule 12(b)(6), *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002), and pro se complaints are held to less stringent

standards than formal pleadings in both contexts, *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002). The Partial Summary Judgment and other papers, containing verbatim transcript excerpts, nine years of professional audit findings, and sworn affidavit admissions, transform an already-plausible complaint into a record that is, as a practical matter, insurmountable at the pleading stage.

*McGruder*'s "however denominated" language expressly forecloses denomination-based arguments for denying amendment status: the operative criterion is whether a filing contains relevant factual allegations bearing on the plaintiff's constitutional claims, not the label applied or the procedural rule invoked. Defendants cannot recharacterize Arnold's Partial Summary Judgment papers as a "Rule 56 evidentiary submission" lying outside *McGruder*'s scope, because the denomination of the filing is precisely what *McGruder* holds irrelevant. The filing's timeline independently forecloses this argument. Arnold filed her Partial Summary Judgment and other papers before Defendants filed their Rule 12(c) motion. Those papers were already in the record before Defendants presented any dispositive question; Defendants' later-filed Rule 12(c) cannot retroactively recharacterize the status of a prior pro se filing.

A. The Partial Summary Judgment Papers Were Before the Court and Contained Specific, Non-Conclusory Facts

Arnold filed her Motion for Partial Summary Judgment before Defendants filed their Rule 12(c) motion. ROA.185-442, 445-461, 506-523. The papers, supported by attached exhibits, contained allegations cited to documentary record evidence:

**The Transcript Admission (ROA.353, Tr. at 41:17-22):** At the January 10, 2018 hearing, Stuart stated: "This is the first time I have ever come into this court in five years of being a prosecutor in Guntown and asked that if someone is convicted that they go to jail." This verbatim transcript excerpt, in Stuart's own words, establishes that the unprecedented jail request was made with temporal proximity to exercise of trial do novo right and immediately after Arnold invoked her right to appeal to the Supreme Court.

**The Nine-Year Audit Record (ROA.394-440):** Nine consecutive annual audit reports, each submitted to the Mayor and Board of Aldermen, each year identifying as a "SIGNIFICANT DEFICIENCY" that "a single employee is in charge of fine collections, docket entry, and warrant issuances." A significant deficiency is defined in the audit report as "a

deficiency, or a combination of deficiencies... important enough to merit attention by those charged with governance."

**The City's Admission (ROA.392, Tracy Arnold Aff.):** During Arnold's 2022 contacts with the City, City personnel admitted that the City had "no method for tracking whether a case was on appeal," a candid admission of the systemic deficiency that produced the void enforcement actions.

**The Policymaker Evidence (ROA.391, Bill Arnold Aff.):** City personnel directed Arnold to Stuart as the final word on court administration decisions across multiple years. In 2017, when Bill and Tracy Arnold went to file motions and briefs at Guntown City Hall, City personnel said they would need to ask Andrew first before he could submit court papers. ROA.8, 391. In 2022, when Arnold contacted the City about the warrants and collections, City employees said "you would need to talk Andrew Stuart." ROA.9, 392. This consistent multi-year pattern demonstrates Stuart's actual final authority over the City's conduct of the prosecution.

Defendants filed a response to the Partial Summary Judgment motion that presented no evidence; it incorporated their Rule 12(c) arguments by reference. ROA.499. Under Rule 56(c)(1), a party opposing summary judgment "must support the assertion by ... citing to particular parts of

materials in the record." Defendants cited no record evidence, designated no facts, and asserted no Rule 56 standard. By treating a live Rule 56 proceeding as a pleadings dispute, Defendants left Arnold's factual record uncontroverted and procedurally waived the opportunity to create a genuine dispute of material fact, thereby rendering their remaining defenses unsupported and legally deficient.

B. The District Court Was Required to Consider These Papers, and Their Omission Was Prejudicial

Arnold specifically invoked *McGruder* in her opposition to the Rule 12(c) motion. ROA.531. The argument was squarely before the district court, which waited 237 days before entering a dismissal order that never addressed it. That silence is not harmless. The court assessed whether the formal complaint stated a claim; it never assessed whether the complaint, augmented by the Partial Summary Judgment and other papers, stated a claim. Taking those papers' specific allegations as true, as *McGruder* requires, the First Amendment retaliation, procedural due process, Sixth Amendment notice, malicious prosecution, and Monell claims each survive 12(c). Reversal is required on this ground alone.

## II. THE DISTRICT COURT GRANTED ABSOLUTE IMMUNITY WITHOUT THE REQUIRED FUNCTIONAL ANALYSIS

The district court granted Stuart absolute prosecutorial immunity, stating his conduct was "squarely within" protected prosecutorial functions. That conclusory determination violates *Buckley*'s requirement that immunity be assessed act-by-act under a functional test.

### A. Buckley Requires Analysis of Each Individual Act

"[T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). The test is functional: immunity attaches only to conduct "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). The court looks to "the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269. Administrative functions, even when performed by prosecutors, carry only qualified immunity. *Burns v. Reed*, 500 U.S. 478, 496 (1991). The district court identified no individual

act, applied no functional analysis, and offered no explanation for why each challenged act was advocacy rather than administration.

Stuart's multiple simultaneous roles make the act-by-act analysis indispensable. Stuart was City Prosecutor, City Attorney, and legal counsel to the Board of Aldermen. ROA.100. (motion regarding separate counsel identifying Stuart's overlapping roles) Stuart's own public requests for Attorney General opinions confirm these overlapping roles: he identified himself to the Attorney General as "the municipal attorney for the board of aldermen of the city of Guntown" who "also serve[s] as the prosecuting attorney for that municipality." Miss. Att'y Gen. Op. No. 2014-00090, 2014 WL 1513511, at *1 (Mar. 21, 2014); see also Miss. Att'y Gen. Op. No. 2015-00323, 2015 WL 6121930, at* 1 (Sept. 18, 2015) (request submitted "in your capacity as municipal court prosecutor for the City of Guntown"). This Court may take judicial notice of these public opinions. Fed. R. Evid. 201.[2] Where a single official holds multiple roles, the *Buckley*

2 All three opinions are official records of the Mississippi Attorney General. The 2024 opinion is publicly available at https://attorneygenerallynnfitch.com/wp-content/uploads/2024/06/A.Stuart-II-June-24-2024-Refunding-Fines-Paid-in-Error.pdf (last visited June 10, 2026); the filename identifies the requestor as "A. Stuart II." The 2014 and 2015 opinions are accessible through the Mississippi Attorney General's Westlaw database at the WL citations in the text. All three are cited as public records under Fed. R. Evid. 201, not as precedential

test requires identifying which role the official exercised at each challenged moment. The district court's blanket ruling never did so.

B. The Challenged Acts Are Administrative, Not Advocacy

Arnold challenges at least five acts that are not advocacy functions:

**1. The five-year failure to comply with the April 2018 order.** After the county court ordered amended affidavits, Stuart and the City chose not to comply for over five years. That is an administrative decision about compliance with a court order, not advocacy before a court. An act the county court itself found unconstitutional cannot simultaneously be "intimately associated with the judicial phase." *Burns*, 500 U.S. at 496.

**2. Direction of the AMS collection referral.** Referring a defendant to a private debt-collection agency that threatens arrest is contract administration and municipal financial management, not advocacy. This is doubly so where, as the record reflects, the agency operated under a federal injunction prohibiting the very threats it made.

**3. Warrant maintenance during the appeal.** Sustaining arrest warrants against a defendant whose case had been transferred to county court is

authority.

executive enforcement, not advocacy. The warrants the Lee County Court found jurisdictionless were not judicial acts.

**4. Paperwork gatekeeping.** The City's statement that filing paperwork required "asking Andrew first" establishes administrative control over access to municipal processes, a bureaucratic function with no intimate association with any judicial proceeding.

**5. The January 2018 jail request.** Stuart had made zero jail requests in five years. ROA.353 (Tr. at 41:17-22) The single departure came immediately after Arnold stated she would take her case to the Supreme Court. A retaliatory exercise of official authority timed to coerce abandonment of protected activity is not advocacy aimed at a legitimate judicial outcome. Even if this Court concludes the in-court request itself carries absolute immunity, that conclusion would not affect acts 1 through 4, which are independently actionable administrative acts subject only to qualified immunity.

The district court immunized acts 1 through 5 by characterizing them collectively as arising from "appeal proceedings." *Buckley* forecloses that approach. The question is what Stuart was doing, not the proceeding to which his conduct was nominally connected.

## III. STUART IS INDIVIDUALLY LIABLE ON THREE INDEPENDENT THEORIES, AND QUALIFIED IMMUNITY DOES NOT BAR THOSE CLAIMS AT THE PLEADING STAGE

Stuart's individual liability does not depend on Monell, on the Board's policymaking status, or on any systemic theory. Three independent causes of action arise directly from his conduct, each with separately satisfiable elements. The retaliation alleged here is specific and targeted: Arnold did not respond to the City's municipal proceedings against her by being chilled into silence; she pushed back by appealing, by stating her intent to seek Supreme Court review, and by filing a constitutional petition, and at each point Stuart escalated. The escalation from no jail (municipal court, ROA.8, 208-209 (Tr. at 25:5-8)) to jail (after the appeal, ROA.353 (Tr. at 41:17-22)) to eighteen months (after the 2023 petition, ROA.31) is the throughline of his individual liability.

### A. The Correct 12(c) Qualified Immunity Standard: Plausible Allegations, Not Proof of Authority

At summary judgment, qualified immunity operates through a burden-shift requiring the plaintiff to identify a case holding the conduct unlawful.

See *Salazar v. Molina*, 37 F.4th 278, 284 (5th Cir. 2022); *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018). At the pleading stage, the question is different. At the pleading stage, the plaintiff need only allege facts sufficient to "state a claim of violation of clearly established law." *Carswell v. Camp*, 54 F.4th 307, 313 (5th Cir. 2022). That is a pleading standard, not an evidentiary one. Defendants argued that Arnold "makes no such showing" and that the absence of a cited case "dooms h[er] case." ROA.571. (12(c) Reply) That is a summary judgment argument imported into a Rule 12(c) procedure. The district court adopted it. Whether Arnold can prove the clearly established prong at summary judgment is not the Rule 12(c) question; whether her allegations plausibly describe a violation a reasonable official would have recognized is.

B. The Allegations Plausibly Describe Clearly Established Violations

*First Amendment retaliatory prosecution (§5.1).* The elements are protected conduct, adverse action, retaliatory animus as a but-for cause, and lack of probable cause. *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006). Arnold exercised her statutory right to trial de novo and announced her intent to seek Supreme Court review (protected conduct). Stuart made his first-ever jail request immediately afterward, sustained warrants for six

years, and deployed a collection agency threatening incarceration (adverse action). The sequence (appeal, then jail request; petition, then eighteen-month motion) supplies but-for animus, and the City's admitted absence of any appeal-tracking system forecloses good-faith administrative error as an alternative explanation. Judge Spencer's finding that the warrants were jurisdictionless establishes lack of probable cause as a matter of law.

*The Nieves distinction is critical.* Defendants will rely on *Nieves v. Bartlett*, 587 U.S. 391 (2019). *Nieves* created a probable-cause safe harbor for retaliatory *arrest* claims against *police officers* making split-second decisions. Stuart is a city attorney exercising sustained authority over six years. *Hartman* governs prosecutorial and administrative retaliation; *Nieves* does not displace it. Moreover, even if *Nieves* applied, the safe harbor requires legally valid probable cause; Judge Spencer's finding that the municipal court warrants were jurisdictionless eliminates that basis entirely, because there can be no probable cause for proceedings rooted in a court that lost jurisdiction when Arnold filed her trial de novo appeal in October 2017. See also *Gonzalez v. Trevino*, 602 U.S. 653 (2024) (per curiam) (objective probable cause does not automatically defeat a retaliatory government-action claim).

*Malicious prosecution (§5.5)*. Under *Thompson v. Clark*, 596 U.S. 36, 40-41 (2022), favorable termination requires only that the prosecution ended without a conviction. The July 5, 2023 dismissal satisfies that element. Spencer's jurisdictionless-warrant finding establishes absence of probable cause; the six-year escalation supplies malice; and six years of active arrest warrants restrain liberty pursuant to legal process. See *Manuel v. City of Joliet*, 580 U.S. 357, 365-67 (2017).

*Vindictive prosecution (§5.2)*. Under *Blackledge v. Perry*, 417 U.S. 21, 27-28 (1974), where a defendant exercises a statutory right and the prosecution escalates, a presumption of vindictiveness arises that the government must rebut. Arnold exercised her right to trial de novo; the City responded with a jail request not previously sought, sustained warrants, five years of non-compliance, and a 2023 motion to set trial filed in direct response to her constitutional petition. The presumption shifts the burden to Defendants, and the record contains no legitimate justification.

### C. The Notice Failure Was the Mechanism That Made the Six-Year Escalation Possible

The constitutional violations are operationally linked, not merely coincidental. Because the charges were never constitutionally specified, and

the City ignored the April 2018 order to cure them, Arnold could not know what she was actually being prosecuted for, and therefore could not evaluate whether the escalation from no jail to jail to maximum jail had any legitimate prosecutorial basis: whether new facts, new charges, or new evidence justified it. The deficient charges thus operated as the structural condition that kept Arnold in a six-year limbo, unable to assess, answer, or terminate the prosecution. This is not only an independent Sixth Amendment notice violation, *Cole v. Arkansas*, 333 U.S. 196 (1948); it is the mechanism through which the retaliatory escalation was carried out and prolonged.

D. Caissie and Moore Cannot Establish Clearly Established Federal Law, and Were Raised in Reply

In their Rule 12(c) reply brief, Defendants argued qualified immunity by citing *Caissie v. State*, 254 So. 3d 849, 856 (Miss. 2018), for the proposition that a traffic ticket gives adequate notice, and Miss. Code Ann. § 21-23-7(3) together with *Moore v. City of Grand Prairie*, 2013 WL 1174457 (N.D. Tex. 2013), for the proposition that municipal judges may issue process. ROA.571. (12(c) Reply) Neither defeats Arnold's claims.

First, both authorities answer questions Arnold did not raise. Arnold never disputed that a municipal judge may, in general, issue process. She alleges that once her trial de novo divested the Municipal Court of jurisdiction, warrants issued in that court during the appeal were void, exactly as Judge Spencer found. And *Caissie* addressed the adequacy of an initial traffic ticket for the original charge; it says nothing about a case in which a court has already found the notice constitutionally deficient and ordered it cured. Defendants used *Caissie* against the very notice failure another Mississippi court had already adjudicated in Arnold's favor.

Second, neither authority can satisfy the "clearly established" prong, which requires federal precedent: Supreme Court authority or a robust circuit consensus. *White v. Pauly*, 580 U.S. 73, 79 (2017). *Caissie* is an intermediate Mississippi Court of Appeals decision on state charging-instrument requirements; the Mississippi Supreme Court never reviewed it. *Moore* is an unpublished district court decision from another state. A state intermediate court's reading of state charging requirements, and an out-of-circuit unpublished trial-court order, do not put "every reasonable official" on notice of federal constitutional law.

§5.1, §5.5, and §5.2 are independent of one another and of the Monell theories in Argument IV. This Court may reverse on any one without reaching the others.

## IV. THE MONELL CLAIMS SURVIVE ON FOUR INDEPENDENT PATHS

Stuart's retaliatory conduct establishes his individual liability; it is not, by itself, the City's policy. The City's liability rests on separate institutional failures, established through four independent paths, each of which survives 12(c) on the expanded record. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

### A. Canton: The Final Policymaker's Nine-Year Deliberate Indifference

Defendants argued, and the district court agreed, that under Miss. Code Ann. §§ 21-23-3 and 21-3-5 the Board of Aldermen is the City's final policymaker. That holding does not end the Monell analysis; it begins it. If the Board is the final policymaker, the Board's deliberate indifference is the City's.

*City of Canton v. Harris*, 489 U.S. 378, 390 (1989), establishes liability where the inadequacy of municipal procedures is "so obvious, and … so

likely to result in the violation of constitutional rights," that the policymaker's failure to act is deliberate indifference. For nine consecutive years, independent auditors warned the Board that "a single employee is in charge of fine collections, docket entry, and warrant issuances." Those precise deficiencies (no oversight of warrant issuance, no tracking of cases on appeal) produced the void enforcement against Arnold. The warnings were not speculative; they predicted exactly what happened. Negligence is failing to perceive a risk; deliberate indifference is being warned of it repeatedly and doing nothing.

The City's own response to the audit converts indifference from inference to record fact. Each year's finding was a single, unified deficiency. In one breath it identified both the City's revenue-handling controls and that "a single employee is in charge of fine collections, docket entry, and warrant issuances." ROA.394-440. The City's written response addressed only the revenue half: it "established [a control] requiring the Mayor's approval of all customer account adjustments." ROA.394-440. It installed no control whatever over the concentration of fine-collection, docket, and warrant authority in one unsupervised employee, and it gave that same selective response year after year. The City therefore read the finding, acted on the

half that protected the City's money, and left untouched the half that protected citizens from wrongful arrest warrants. That is not a failure to perceive a risk; it is a documented, deliberate choice to leave the dangerous condition in place. Because the City's chosen control took the form of the Mayor's personal approval, the Mayor engaged directly with the very finding whose warrant-side warning the City declined to act on. The unremedied half is precisely the deficiency that produced the jurisdictionless warrants against Arnold.

The AMS enforcement crystallizes the point. The City referred Arnold's case to American Municipal Services Corporation (AMS) for arrest-backed debt collection while the case was on active appeal, while the warrants were jurisdictionless, and while AMS operated under a federal permanent injunction entered March 21, 2017, five years before the first notice to Arnold. *FTC v. American Municipal Services Corp.*, No. 4:17-cv-00168 (E.D. Tex.). That injunction permanently prohibited AMS from misrepresenting that arrest warrants had been issued, threatening arrest for non-payment, or implying its communications were from a governmental entity. *Id.* at 3. The AMS notices to Arnold (stating that "the court [had] issued an arrest warrant" and claiming "the court has authorized American

Municipal Services … to assist it") violated each of those prohibitions. ROA.26-29.; see also ROA.386. (AMS Collection Notice)

The City's deliberate indifference is established either way. **If the City knew** AMS was under federal injunction for threatening arrest warrants when it contracted with AMS for collection, then the City knowingly delegated enforcement to an agency under active federal court order for the exact practice it would later use against Arnold. **If the City did not know,** that ignorance is itself deliberate indifference: a municipality that contracts with a private collection agency to threaten its residents with arrest owes a constitutional duty of elementary due diligence, particularly where, as here, the injunction was a matter of public record and the City's Answer admitted the AMS notices "speak for themselves" without denying their content. *Canton*, 489 U.S. at 390 (deliberate indifference where risk is "so obvious" that failure to act is a conscious choice). The City presented no evidence in its Rule 56 response to suggest it conducted any inquiry into AMS's legal authority, and its Rule 12(c) motion offered only legal argument. Where the moving party in a Rule 56 posture submits record evidence, the opposing party cannot rest on pleading denials. Fed. R. Civ. P. 56(e).

A City with no system to verify whether a case is on appeal cannot validate legal authority before referring a case for arrest-backed collection. That is the audit-documented failure producing a specific constitutional harm. Critically, this is not a training problem; it is a **policy gap**. If the City had a policy requiring employees to check whether a case was on appeal before issuing warrants or referring to collections, and simply failed to train employees on that policy, that would be a failure-to-train theory. But no such policy existed. The City never created any procedure for tracking case removals to a higher court. The absence of any policy or procedure is itself the municipal failure chargeable under *Monell*, a deliberate institutional choice to leave enforcement wholly unsupervised rather than to design and implement safeguards.

The City had multiple opportunities to demonstrate otherwise, and each time it produced nothing. Its Rule 56 response to the Partial Summary Judgment cited no evidence, designated no facts, and incorporated its Rule 12(c) motion by reference. ROA.499. Its annual audit responses for nine consecutive years addressed only the revenue half of the auditors' single unified finding, never the warrant-and-tracking half. ROA.394-440. And its Answer admitted the AMS collection notices "speak for themselves" without

asserting any institutional check on whether the underlying case remained within the City's enforcement authority. ROA.117. From these silences, the reasonable inference (indeed, the only inference the record supports) is that the City operated without any policy for tracking case removals to a higher court, and that this absence was deliberate, not accidental.

Either way the record develops, the City is liable. **If no policy existed**, the absence is itself the municipal failure chargeable under *Monell*. **If a policy existed but was never trained**, the failure to train is deliberate indifference under *Canton*. The City cannot point to any scenario in which it escapes § 1983 liability for enforcement actions taken against a case it had no institutional mechanism to know was on appeal.

B. Pembaur: Stuart's Final Authority in the Domain of Municipal Enforcement and Court Administration

Independently, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 483-84 (1986), holds that a single decision by an official with "final authority to establish municipal policy with respect to the action ordered" is municipal policy, even absent a broader custom, and even if the official is not the general policymaker. The policymaker-versus-decisionmaker line Defendants drew below has no basis in *Pembaur*'s text: the Court calls the relevant

official a "decisionmaker" who "possesses final authority" in the subject matter at issue. *Id.* at 483-84.

City personnel confirmed Stuart's final authority by directing all litigation inquiries to him across 2017 and 2022 ("ask Andrew first"). ROA.391-392. His own conduct of municipal legal policy is further reflected in his public requests for Attorney General guidance on the City's behalf, including a 2015 request, made "in [his] capacity as municipal court prosecutor," asking whether the Municipal Court could issue an arrest warrant against a defendant whose delinquent fine had been referred to a private collection agency. Miss. Att'y Gen. Op. No. 2015-00323, 2015 WL 6121930 (Sept. 18, 2015). A line prosecutor does not design a municipality's collection-and-warrant policy; the official who does is the final decisionmaker in that domain. The non-compliance decision, the AMS referral, and the warrant maintenance were Stuart's decisions. Under *Pembaur*, they are the City's. Stuart's employment classification does not change this: *Monell*'s respondeat superior bar concerns vicarious liability for an employee's torts; *Pembaur* liability is direct liability for the municipality's own policy decisions, and it follows the grant of authority, not the employment contract.

C. Ratification: The City's Response to the 2023 Constitutional Petition

A municipality is liable where a final policymaker ratifies an unconstitutional act with knowledge of its basis. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). When Arnold filed her April 2023 Petition to Dismiss, the constitutional violations were brought to the attention of both Stuart and the Mayor. The institutional response was not correction but escalation: Stuart moved to set the matter for trial seeking eighteen months of imprisonment, and after Judge Spencer's June 8, 2023 findings and ten-day show-cause directive were served directly on Stuart, the City filed nothing, did not comply, and took no corrective action. A final policymaker's knowing approval of unconstitutional conduct, by escalation and by inaction in the face of direct judicial notice, is ratification chargeable to the City.

The point holds whichever way the record ultimately develops. If the Board and Mayor reviewed the 2023 petition and the June 8 findings and chose to do nothing, that is ratification. If instead they conducted no review at all, that absence of any supervisory process is the custom of non-supervision the audits documented for nine years, and is itself the municipal policy under Section IV/A. Arnold need not establish which at the pleading

stage; both are forms of the same municipal failure, and discovery, which the dismissal foreclosed, would resolve which governs.

D. Webster: The Persistent and Widespread Custom of No Supervision

Independently of the policymaker-focused paths above, the City's constitutional liability is established through a persistent, widespread custom of municipal employees that fairly represents municipal policy. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). Under *Webster*, a municipality is liable where (1) a persistent, widespread practice of city officials or employees is "so common and well settled as to constitute a custom that fairly represents municipal policy," and (2) actual or constructive knowledge of such custom is attributable to the governing body or to an official to whom that body has delegated policymaking authority. *Id.*

The no-supervision custom operated through a **dual absence of oversight:** over the municipal court employee handling fine collections, docket entry, and warrant issuances without segregation of duties for nine consecutive years, and over Andrew Stuart's litigation decisions. City personnel required Stuart's approval before filing basic court paperwork ("ask Andrew first"), yet Stuart himself operated without any supervisory review from the Mayor,

the Board, or any other city official. ROA.8-9, 391-392. This dual absence of supervision created the institutional environment that enabled systematic constitutional violations.

**As to the court employee:** For nine consecutive years, independent auditors notified the Mayor and Board of Aldermen that "a single employee is in charge of fine collections, docket entry, and warrant issuances." ROA.394-440. The Board received each report; actual knowledge is established on this record. The Board's response confirmed the custom: it addressed only the City's revenue controls (requiring the Mayor's approval of account adjustments) and left the concentration of warrant, docket, and enforcement authority in one unsupervised employee untouched, year after year. Annual ratification through deliberate inaction on professional warnings is itself an expression of the custom.

**As to the City's collection contracting:** The same absence of institutional oversight meant no one verified whether the collection agency the City contracted with (American Municipal Services Corporation) had legal authority to collect on the City's behalf. AMS operated under a federal permanent injunction entered March 21, 2017, in *FTC v. American Municipal Services Corp.*, No. 4:17-cv-00168 (E.D. Tex.), which

permanently prohibited it from misrepresenting that arrest warrants had been issued, threatening arrest for non-payment, or implying its communications were from a governmental entity. None of the City's annual audits, Board reviews, or supervisory processes caught this because the City had no system for supervising who it contracted with to collect fines, let alone whether those contractors were under federal court order. The AMS referral was not a rogue act by one employee; it was the predictable product of a municipal custom of not supervising the collection function. Discovery would establish whether any city official knew of the injunction and, if not, whether the absence of that knowledge itself demonstrates the custom's pervasiveness. Discovery would also establish whether the City misrepresented to AMS the legal status of the warrants, informing AMS that valid warrant authority existed while the case was on appeal and the warrants were jurisdictionless, which would make the City an active participant in the injunction violation rather than a passive bystander.

**As to Stuart:** The same absence of supervisory oversight that left the court employee unchecked also left Stuart's litigation decisions (including the five-year refusal to comply with the April 2018 amendment order and the

jurisdictional enforcement pursued during appeal) without any institutional review, correction, or accountability. The "no supervision" custom transformed court order compliance from mandatory institutional duty to discretionary individual choice, producing the systematic disregard that violated Arnold's constitutional rights. When Arnold's April 2023 petition documented five years of court order non-compliance and was served directly on the Mayor and Stuart, no evidence exists of any supervisory inquiry or oversight implementation. Instead, Stuart's response (moving to set trial for eighteen months' imprisonment) proceeded without any supervisory review, demonstrating continued adherence to the no-supervision custom even when constitutional violations were explicitly documented.

The *Webster* path is distinct from the *Canton* path (IV/A). *Canton* asks whether a final policymaker's deliberate indifference to a known risk is the municipality's policy; the audit record answers yes. *Webster* asks whether the persistent, well-settled practice of the City's employees (acting without supervision across the same domain) has become a custom for which the governing body's knowing inaction is chargeable. Both paths converge on the same constitutional harm, but each independently satisfies *Monell*'s

policy-or-custom requirement. The no-supervision custom was the moving force behind each category of violation: void warrants resulted from lack of supervision over warrant issuances; notice violations resulted from lack of supervision over Stuart's litigation decisions; retaliation resulted from lack of supervision enabling his unprecedented escalations. Discovery into whether the City's no-supervision practice extended to other domains is appropriate and was foreclosed by dismissal.

## V. THE LEE COUNTY COURT'S CONSTITUTIONAL FINDINGS HAVE PRECLUSIVE EFFECT UNDER 28 U.S.C. § 1738

The district court dismissed Arnold's constitutional claims as if every element had to be litigated from scratch. Three constitutional violations at the core of those claims were already tried and decided in a contested state proceeding, and under 28 U.S.C. § 1738 those findings bind Defendants. Arnold raised § 1738 and *Allen v. McCurry* below, in her separate-counsel reply ROA.91 and PSJ reply ROA.513. The dismissal order did not address it.

A. § 1738 Requires Federal Courts to Honor State Court Issue Determinations

Federal courts must give state judgments "the same full faith and credit … as they have by law or usage in the courts of such State." 28 U.S.C. § 1738. In *Allen v. McCurry*, 449 U.S. 90, 96-99 (1980), the Court held there is no § 1983 exception. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984), does not bar Arnold: as the criminal defendant in a traffic prosecution, she had no mechanism to assert § 1983 claims as counterclaims. Offensive issue preclusion is permitted where not unfair to the precluded party. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979). Under Mississippi law, issue preclusion requires an identical issue, actually litigated, necessary to the judgment, with a full and fair opportunity to litigate. See *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 232 (Miss. 2005) Each element is satisfied.

B. Each Element Is Satisfied

**Identical issue.** Arnold's claims rest on denial of due process, denial of constitutionally adequate notice, and issuance of void warrants. The Lee County Court decided all three: "the delay in this matter violated the Defendant's Constitutional right to Due Process," and "the Defendant was

not properly notified of her charges." ROA.34, 38. (Spencer Mem. Op.) Spencer further found the arrest warrants issued during the pendency of the appeal void and ordered them immediately stricken, as the Municipal Court had no jurisdiction after the trial de novo divested it of authority. That finding establishes the Fourth Amendment predicate as an adjudicated fact entitled to preclusive effect alongside the due process and notice holdings.

**Actually litigated.** The findings were not by default. Arnold petitioned; Stuart contested by moving for trial seeking eighteen months' imprisonment; the court issued a written opinion. ROA.34. After the ruling, the court served Stuart directly with the findings and show-cause directive, ROA.41; Stuart filed nothing, ROA.43, and neither sought reconsideration nor appealed. ROA.101-102. Spencer's analysis of the six-year delay incorporated the *Barker v. Wingo*, 407 U.S. 514 (1972), balancing framework, making the speedy-trial dimension of the due process finding an actually litigated determination entitled to preclusive effect.

**Necessary to judgment.** The June 8 opinion directed the City present evidence it cured the April 2018 deficiency within ten days; the City did not; the July 5, 2023 dismissal followed directly from the findings and the failure to cure. The findings were the legal premise of the judgment, not dicta.

**Full and fair opportunity.** Defendants had five years to provide adequate notice, contested the petition, received direct notice of the findings, and chose not to respond or appeal. Preclusion works no unfairness on a party who received adverse findings and declined to seek review.

**Stuart individually.** Stuart, though not a named party in *City of Guntown v. Tracy Arnold*, is bound by preclusion as a party in privity. He was the prosecution's attorney, with an identical interest and a full opportunity at every stage, and the court served the June 8 findings on him personally by name. ROA.41. Under Mississippi preclusion principles, privity exists where a non-party's interests were fully represented and the non-party had a full and fair opportunity to contest.

C. Preclusion Narrows, But Does Not Eliminate, the Federal Claims (Inverse-Heck)

Issue preclusion does not bar Arnold's action; it narrows it. Because the violations are established, Defendants may contest only the remaining elements: color of law (facially satisfied), attribution to the City under *Monell* (Argument IV), and damages.

The symmetry with *Heck v. Humphrey* makes this inescapable. *Heck* bars a § 1983 plaintiff from using federal litigation to undo an intact conviction.

512 U.S. at 486-87. The principle is that parties may not collaterally attack what a competent court conclusively decided. The same principle operates here in reverse. The Lee County Court conclusively found constitutional violations; that determination was never appealed, reversed, or vacated. Just as *Heck* requires a plaintiff to first obtain reversal of a conviction, § 1738 requires Defendants to first obtain reversal of the state court's findings before relitigating whether violations occurred. They did not. The violations are established; only attribution and remedy remain. Because this is a pure question of law on a final, unappealed judgment, this Court can resolve it and reverse outright.

## VI. THE STATUTE OF LIMITATIONS DEFENSE FAILS: ARNOLD'S CLAIMS DID NOT ACCRUE UNTIL THE JULY 5, 2023 DISMISSAL

Defendants asserted that Arnold's claims are time-barred under Mississippi's three-year personal-injury period. Miss. Code Ann. § 15-1-49(1); *see Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Ricks v. City of Winona*, 858 F. Supp. 2d 682, 690 (N.D. Miss. 2012). The defense fails on three independent grounds.

A. Accrual Did Not Occur Before the July 5, 2023 Favorable Termination

A § 1983 claim accrues when the plaintiff has "a complete and present cause of action." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). For retaliatory and malicious prosecution, favorable termination is an element of the tort, not merely a *Heck* condition. *Thompson v. Clark*, 596 U.S. 36, 40-41 (2022). A claim missing a required element does not accrue. The prosecution was a single, continuous county-court proceeding from October 2017 onward, *Caissie*, 254 So. 3d at 856, and Arnold had no complete cause of action for these claims until the Lee County Court dismissed all charges on July 5, 2023. Accrual July 5, 2023; complaint February 18, 2025; nineteen months; timely without reaching *Heck*.

B. Defendants' Heck Defense (Affirmative Defense #17) Fails

Defendants asserted *Heck* as Affirmative Defense #17 and invoked it implicitly in their 12(c) motion by characterizing Arnold as "ultimately convicted." ROA.118. That is wrong twice over. Under *Caissie*, Arnold's October 2017 trial de novo divested the Municipal Court of jurisdiction "as if there had never been a trial," superseding the municipal conviction. 254 So. 3d at 856. And the county proceeding ended in dismissal in Arnold's favor on July 5, 2023. The conviction *Heck* requires does not exist; any bar

dissolved on favorable termination. *Heck*, 512 U.S. at 486-87; *Thompson*, 596 U.S. at 40-41.

*Olivier v. City of Brandon*, 607 U.S. ___ (2026), decided after the dismissal below and therefore intervening authority this Court applies on de novo review, confirms the point. The Court held *Heck* bars only claims that "collaterally attack" an existing conviction; the "necessarily imply the invalidity" language "swept a bit too broad" and does not reach claims where conviction-invalidity arises only "as a kind of byproduct." *Id.* (slip op., at 9-12). Arnold's position is stronger than Olivier's: there, the conviction remained intact; here, it was eliminated. There is nothing to collaterally attack.

C. Independent 2022-2023 Accrual Events

For claims that do not depend on the conviction's validity (First Amendment retaliation and the Fourth Amendment void-warrant claims), limitations runs from the date of injury. The 2022-2023 AMS notices (July 6, 2022; October 6, 2022; January 9, 2023; April 13, 2023) are independent injury events within three years of the February 18, 2025 complaint. Arnold's claims are timely regardless of which theory governs each count.

## VII. DISMISSAL WITH PREJUDICE WITHOUT LEAVE TO AMEND WAS ERROR

The district court dismissed all claims with prejudice without offering leave to amend or finding amendment futile. This Circuit requires that a district court afford a plaintiff at least one opportunity to amend before dismissing with prejudice, unless amendment would be futile. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); accord *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam). Amendment is futile only if the amended complaint would fail to state a claim. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). Arnold is a pro se plaintiff who never formally amended, owed heightened solicitude under *Haines*.

Amendment is plainly not futile. The Partial Summary Judgment record already supplies the specific facts a redrafted complaint would incorporate. And public records subject to judicial notice, surfaced during the very period this case should have proceeded into discovery, confirm that admissible evidence supporting the Pembaur, Canton, Webster and retaliation theories exists and is obtainable:

- **The AMS federal injunction.** *FTC v. American Municipal Services Corp.*, No. 4:17-cv-00168 (E.D. Tex.), establishes that the collection agency the City used was federally enjoined from misrepresenting warrant issuance and threatening arrest without legal authority. An amended complaint would allege that the City referred Arnold's case to that agency with no system to verify the case was on appeal, producing arrest threats on jurisdictionless warrants.
- **Stuart's Attorney General opinions.** Three opinions Stuart personally requested, of which this Court may take judicial notice, document his deliberate development of the City's collection-and-warrant practice and his domain authority. In 2015, "as municipal court prosecutor," he asked whether the Municipal Court could issue an arrest warrant against a defendant whose fine had been referred to a collection agency. Miss. Att'y Gen. Op. No. 2015-00323, 2015 WL 6121930 (Sept. 18, 2015). The answer he obtained rested on Miss. Code Ann. § 99-37-7, which authorizes a contempt warrant only where a defendant "sentenced to pay a fine … defaults," that is, only where a final sentence exists. Arnold had no final sentence; her trial de novo had divested the Municipal Court of jurisdiction. The opinion Stuart

obtained thus confirms the predicate for a valid warrant was absent in Arnold's case. In 2024, Stuart asked whether the City could refund a fine accepted from the wrong person, a notice having been addressed to a former resident at the payor's address. Miss. Att'y Gen. Op., 2024 WL 4357291 (June 24, 2024). That request documents that the collection system extracts payment without verifying who owes, and that the defect persisted after Arnold's dismissal. These opinions are not cited as legal authority; they are public records evidencing Stuart's role, knowledge, and the system's documented failures, exactly the material discovery would develop.

The district court's failure to analyze Arnold's separately-pled request for equitable and injunctive relief compounds the error. Arnold's complaint sought injunctive and declaratory relief, including compliance with the April 2018 constitutional order and prohibition on further unlawful enforcement practices. The district court's order dismissed every claim without acknowledging the equitable request, applying neither Rule 12(c)'s plausibility standard to any equitable theory nor the standard governing injunctive relief. Equitable claims require their own analysis; dismissal of a request for injunctive relief without finding that the plaintiff fails to state a

cognizable equitable claim is an independent error. On remand Arnold is entitled to develop her equitable claims on the full record.

The failure to permit amendment, without any finding of futility, is an independent ground for reversal.

## VIII. THE MAGISTRATE'S DENIAL OF THE MOTION TO STRIKE AFFIRMATIVE DEFENSES WAS CONTRARY TO *WOODFIELD*

<u>A. Rule 12(f) presents two independent questions that the Magistrate collapsed into one.</u>

Federal Rule 12(f) permits striking any "insufficient defense." That term encompasses two distinct inquiries: (1) whether a defense is *adequately pleaded* under *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999)'s "fair notice" standard; and (2) whether a defense is *legally available* under controlling precedent, regardless of how carefully it is pleaded. The Magistrate applied only the first inquiry to all twenty defenses, concluding that "pleading the name of the affirmative defense may be sufficient." That misreads *Woodfield*. The court applied a narrow conditional exception ("in some cases," a defense name alone *may* suffice) as a universal minimum, without conducting the case-by-case analysis *Woodfield* requires and

without asking whether binding Supreme Court authority renders certain defenses legally impossible regardless of their pleading quality.

**B. Several defenses are categorically foreclosed: not curable by better pleading.**

*Owen v. City of Independence*, 445 U.S. 622, 638 (1980), held categorically that municipalities "may not assert the good faith of their officers as a defense" to § 1983 liability and that municipalities have no immunity from such claims. The prohibition extends to qualified immunity, sovereign immunity, and good-faith defenses when asserted by the City. Defense #4 (sovereign, qualified, absolute, prosecutorial, and legislative immunity for the City), Defense #9 (good faith/honest belief), and Defense #10 (comparative fault) are not pleading deficiencies curable with more facts; *Owen* forecloses them as applied to the municipal defendant as a matter of substantive § 1983 law.

Defense #7 (Mississippi Tort Claims Act) is independently foreclosed by *Felder v. Casey*, 487 U.S. 131 (1988): state notice-of-claim requirements and procedural prerequisites do not apply to § 1983 claims brought in federal court. Defense #11 (failure to exhaust administrative remedies) is foreclosed by *Patsy v. Board of Regents*, 457 U.S. 496 (1982): § 1983 requires no

administrative exhaustion. Defense #13 (adequate state remedy) is foreclosed by *Monroe v. Pape*, 365 U.S. 167 (1961): § 1983 provides an independent federal remedy regardless of available state procedures. Each of these defenses fails as a matter of law, not pleading; no factual development can resurrect them.

Defense #17 (Heck v. Humphrey) presents the same structural problem on its own terms. *Heck* bars § 1983 claims only where a favorable judgment "would necessarily imply the invalidity" of an *existing* criminal conviction. The essential predicate (an intact conviction) is absent here: the conviction was eliminated by trial de novo and by the July 2023 dismissal with prejudice. No additional factual pleading can manufacture the intact conviction *Heck* requires. This is legal impossibility, not pleading inadequacy.

Defense #14 ("reserving" all FRCP 8(c) defenses) is not an affirmative defense at all. Rule 12(h) is the exclusive mechanism for preserving defenses; defendants cannot create a private preservation system outside that framework. It is stricken as insufficient on its face.

**C. The *Woodfield* inversion independently requires reversal.**

Even for defenses not categorically foreclosed, the Magistrate's application of *Woodfield* was contrary to law. *Woodfield* requires a case-by-case determination of whether each defense gives the plaintiff "fair notice" of the defense that is being advanced, enough that the plaintiff can anticipate and prepare. The holding that the defense name alone may suffice is explicitly conditional: *id.* says "in some cases," meaning the exception applies where the defense name itself communicates its factual basis. Converting that conditional into a universal minimum (applied to twenty defenses collectively without analysis) inverts the standard.

The systemic effect is concrete. Defenses pleaded as pure legal labels open discovery that would otherwise have no basis. Heck enables exploration of criminal history despite no intact conviction. Defense #15 (unclean hands) invites personal-life inquiries. Defense #16 (after-acquired evidence) suggests employment-record discovery, a doctrine drawn entirely from the employment context. Against a pro se plaintiff facing institutional defendants with retained counsel, this converts § 1983 (designed by Congress as an accessible federal remedy) into resource-exhaustion litigation through predetermined-to-fail positions. The court is then burdened with briefing on barred issues, foreclosed doctrines, and contextually irrelevant

theories that consume judicial resources and dilute the deterrent function § 1983 was enacted to serve.

**D. The Rule 72(a) standard is satisfied; the stakes on remand require resolution now.**

Under Rule 72(a), a magistrate's non-dispositive ruling is set aside if it is "contrary to law." Applying a single universal minimum-pleading rule without case-by-case analysis, and failing to recognize that binding precedent independently forecloses several defenses regardless of pleading quality, both represent pure questions of law reviewed de novo. The district court compounded the error by overruling the Rule 72(a) objection without analysis. ROA.575-588.

These defenses already shaped Defendants' 12(c) reply: the Heck and immunity arguments appeared in that filing, framing the merits presentation the district court received. ROA.526 (Arnold's 12(c) Opp.); ROA.571 (12(c) Reply). On remand, they will define the scope of discovery and the defenses Defendants may assert at summary judgment. Settling the legal question now avoids relitigating foreclosed issues through successive remand proceedings.

Granting the Motion to Strike carries one further structural consequence independent of Arnold's pro se status. A remand order requiring Defendants to re-answer with properly pleaded defenses returns the case to active pleadings stage. Arnold's opportunity to conform her complaint to the corrected record follows from that posture: whether as a matter of course under Rule 15(a)(1)(B) upon service of the new responsive pleading, or by leave under Rule 15(a)(2) in the interest of justice, the amendment right flows from the remand order itself, without requiring the Court to reach *McGruder* at all. Any party facing a new, properly framed answer has a corresponding right to amend; that principle does not depend on pro se status.

## CONCLUSION

For the foregoing reasons, Appellant Tracy Miller Arnold respectfully requests that this Court:

1. **Reverse** the grant of Defendants' Motion for Judgment on the Pleadings, ROA.499;
2. **Grant** Plaintiff's Partial Summary Judgment as to the official-capacity and Monell claims (IV/A–D), holding that the nine-year audit record, the "ask Andrew first" evidence of Stuart's domain authority, the

AMS federal injunction, and the City's admitted absence of any appeal-tracking system establish municipal liability through four independent paths under *Canton*, *Pembaur*, *Praprotnik*, and *Webster*;

3. **Grant** Plaintiff's Motion to Strike Affirmative Defenses, ROA.140-174, sustaining the Rule 72(a) Objection, ROA.575-588, and reversing the Magistrate Judge's Order, ROA.565-566, as contrary to law, striking with prejudice those defenses categorically foreclosed by *Owen*, *Felder*, *Patsy*, and *Monroe* (Defenses #4, #7, #9, #10, #11, #13, and #17 insofar as there is no intact conviction), and directing *Woodfield* case-by-case analysis of the remainder; and
4. **Remand** for further proceedings consistent with this Court's rulings, including (a) treatment of the Partial Summary Judgment and other papers as amendments to the complaint under *McGruder*; (b) application of the correct Rule 12(c) qualified immunity standard under *Carswell*; (c) an act-by-act functional analysis under *Buckley*; (d) preclusive effect under § 1738 to the Lee County Court's findings; and (e) leave to amend; (f) consideration of Arnold's equitable and injunctive relief request on the correct standard; and (g) reconsideration of the Rule 72(a) objection to the Magistrate's denial

of the Motion to Strike under the correct *Woodfield* two-part standard.

In the alternative, if this Court does not reverse outright on the foregoing grounds, Appellant requests remand with instructions as set forth in paragraph 4 above.

Respectfully submitted,

/s/ Tracy Miller Arnold

Tracy Miller Arnold

Pro Se

PO Box 864

Savannah, Tennessee 38372

423-529-4335

tracy.knightswife@gmail.com

## CERTIFICATE OF SERVICE

I, Tracy Miller Arnold, certify that on June 10, 2026, I electronically filed the foregoing APPELLANT'S OPENING BRIEF with the Clerk of the United States Court of Appeals for the Fifth Circuit using the pro se email mailbox. I also served a copy via email on counsel for Appellees:

G. Todd Butler, todd.butler@phelps.com

Sonya Dickson, sonya.dickson@phelps.com

Phelps Dunbar LLP

/s/ Tracy Miller Arnold

Tracy Miller Arnold

Pro Se

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts exempted by Rule 32(a)(7)(B)(iii), it contains 11,560 words.

This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it was prepared in a proportionally spaced typeface using LibreOffice Writer in Sabon 14-point font.

/s/ Tracy Miller Arnold

Tracy Miller Arnold

Dated: June 10, 2026