**No. 26-60123**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

TRACY MILLER ARNOLD,

*Plaintiff–Appellant,*

*versus*

CITY OF GUNTOWN, individual and official capacity; ANDREW STUART, individual and official capacity,

*Defendants–Appellees.*

---

On Appeal from the
United States District Court
Northern District of Mississippi
Civil Action No. 1:25-cv-24

---

# BRIEF OF APPELLEE

---

G. Todd Butler (Miss. Bar #102907)
Sonya Dickson (Miss. Bar #106284)
PHELPS DUNBAR LLP
1905 Community Bank Way, Suite 200
Flowood, MS 39232
Telephone: 601-352-2300
Facsimile: 601-360-9777

Patrick M. Judd (La. Bar #40415)
PHELPS DUNBAR LLP
365 Canal Street | Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-566-1311
Facsimile: 504-568-9130

**ATTORNEYS FOR DEFENDANTS–APPELLEES**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Tracy Miller Arnold, Plaintiff–Appellant (pro se);
2. City of Guntown, Mississippi, Defendant–Appellee;
3. Andrew Stuart, individually and in his official capacity, Defendant–Appellee;
4. Phelps Dunbar, LLP, G. Todd Butler, Sonya C. Dickson, and Patrick M. Judd, counsel for Defendants–Appellees;
5. Mississippi Municipal Liability Plan;
6. Judge Glen H. Davidson, Senior United States District Judge, United States District Court for the Northern District of Mississippi; and
7. Magistrate Judge David A. Sanders, United States Magistrate Judge, United States District Court for the Northern District of Mississippi.

SO CERTIFIED, this 24th day of July, 2026.

*/s G. Todd Butler*

Gregory Todd Butler
Phelps Dunbar LLP
1905 Community Bank Way,
Suite 200
Flowood, Mississippi 39232
Telephone: (601) 352-2300
Facsimile: (601) 360-9777

**ATTORNEY FOR DEFENDANTS–APPELLEES**

## STATEMENT REGARDING ORAL ARGUMENT

Defendants–Appellees do not believe oral argument is necessary. The district court correctly applied Fifth Circuit precedent on absolute prosecutorial immunity and *Monell* municipal liability, and the issues presented are controlled by well-established legal principles that do not require further elaboration through oral advocacy. The briefs and record adequately present the facts and legal arguments for this Court's consideration.

# TABLE OF CONTENTS

**Contents**

CERTIFICATE OF INTERESTED PERSONS .......... i

STATEMENT REGARDING ORAL ARGUMENT .......... iii

TABLE OF AUTHORITIES .......... vi

STATEMENT OF JURISDICTION .......... 1

STATEMENT OF THE ISSUE .......... 1

STATEMENT OF THE CASE .......... 1

I. Factual Background .......... 2

II. Procedural Background .......... 3

STANDARD OF REVIEW .......... 5

SUMMARY OF THE ARGUMENT .......... 6

ARGUMENT .......... 8

I. Stuart Is Entitled to Absolute Prosecutorial Immunity Because His Challenged Conduct Was Functionally Prosecutorial .......... 8

II. There Is No *Monell* Liability Because the Board of Aldermen Have Final Policymaking Authority, not the City Prosecutor. .......... 14

A. Stuart is not a final policymaker under Mississippi law. .......... 16

B. Neither the audit findings nor Arnold's custom and ratification theories establish deliberate indifference or an official policy .......... 18

III. Arnold's Arguments on Appeal Do Not Disturb the District Court's Purely Legal Rulings. .......... 22

A. *McGruder* does not disturb either ruling because additional facts cannot alter a legal conclusion. ....................... 23

B. Section 1738 does not disturb either ruling for the same reason. ....................... 24

C. Arnold forfeited any claim to leave to amend by never requesting it below. ....................... 25

IV. The District Court Did Not Abuse Its Discretion in Overruling Arnold's Objection to the Magistrate Judge's Denial of Arnold's Motion to Strike Affirmative Defenses. ....................... 28

V. This Court Has Multiple Other Grounds on Which It Can Affirm. ....................... 30

A. Arnold's claims are time-barred. ....................... 30

B. Stuart is alternatively entitled to Qualified Immunity ....................... 31

CONCLUSION ....................... 32

CERTIFICATE OF COMPLIANCE ....................... 34

CERTIFICATE OF SERVICE ....................... 35

# TABLE OF AUTHORITIES

**Cases**

*Allen v. McCurry*,
449 U.S. 90 (1980) ....................24

*Alphonse v. Arch Bay Holdings, L.L.C.*,
618 F. App'x 765 (5th Cir. 2015) ....................5, 29

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009....................5

*Bazrowx v. Scott*,
136 F.3d 1053 (5th Cir. 1998) ....................28

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................5

*Bennett v. City of Slidell*,
735 F.2d 861 (5th Cir. 1984) ....................15

*Boyd v. Biggers*,
31 F.3d 279 (5th Cir. 1994).................... 11, 13

*Brown v. Bryan County*,
219 F.3d 450 (5th Cir. 2000) ....................15

*Buckley v. Fitzsimmons*,
509 U.S. 259 (1993) .................... 6, 11, 13

*Burns v. Reed*,
500 U.S. 478 (1991) ....................9

*City of St. Louis v. Praprotnik*,
485 U.S. 112 (1988) .................... 17, 18, 21

*Connick v. Thompson*,
563 U.S. 51 (2011) .................... 14, 19, 20

*Cousin v. Small*,
325 F.3d 627 (5th Cir. 2003) ....................................................................8

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008) ....................................................................5

*Farmers Tex. Cnty. Mut. Ins. Co. v. 1st Choice Accident & Injury, L.L.C.*,
168 F.4th 271 (5th Cir. 2026)...............................................................6, 30

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) ............................................................ 27, 28

*Groden v. City of Dallas*,
826 F.3d 280 (5th Cir. 2016) ...................................................... 16, 17, 22

*Imbler v. Pachtman*,
424 U.S. 409 (1976) ...............................................................................8

*Johnson v. Harris County*,
83 F.4th 941 (5th Cir. 2023)....................................................................16

*LSREF2 Baron, L.L.C. v. Tauch*,
751 F.3d 394 (5th Cir. 2014) ............................................................ 29, 30

*Masel v. Villarreal*,
924 F.3d 734 (5th Cir. 2019) ..................................................................26

*McGregory v. City of Jackson*,
335 F. App'x 446 (5th Cir. 2009) ............................................................15

*McGruder v. Phelps*,
608 F.2d 1023 (5th Cir. 1979) ................................................................23

*Milam v. City of San Antonio*,
113 F. App'x 622 (5th Cir. 2004) ............................................................22

*Monell v. Dep't of Soc. Servs. of City of N.Y.*,
436 U.S. 658 (1978) ........................................................................ 14, 18

*Moon v. City of El Paso*,
906 F.3d 352 (5th Cir. 2018) ..................................................................11

*Moore v. Willis Indep. Sch. Dist.*,
233 F.3d 871 (5th Cir. 2000) ....................5, 29

*Morgan v. Swanson*,
659 F.3d 359 (5th Cir. 2011) ....................32

*Mullenix v. Luna*,
577 U.S. 7 (2015)....................32

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986) ....................17

*Peterson v. City of Fort Worth*,
588 F.3d 838 (5th Cir. 2009) ....................16

*Piotrowski v. City of Houston*,
237 F.3d 567 (5th Cir. 2001) .................... 14, 15, 21

*Quinn v. Roach*,
326 F. App'x 280 (5th Cir. 2009) ....................11

*Quiroz v. Hernandez*,
167 F.4th 254 (5th Cir. 2025)....................13

*Rogers v. McDorman*,
521 F.3d 381 (5th Cir. 2008) ....................29

*Sanders-Burns v. City of Plano*,
594 F.3d 366 (5th Cir. 2010) ....................19

*Singleton v. Cannizzaro*,
956 F.3d 773 (5th Cir. 2020) ....................14

*Sockwell v. Calhoun City*,
No. 3:19-cv-4, 2019 WL 3558173 (N.D. Miss. Aug. 5, 2019)....................17

*Stripling v. Jordan Prod. Co.*,
234 F.3d 863 (5th Cir. 2000) ....................27

*Thompson v. Clark*,
596 U.S. 36 (2022) ....................31

*Van de Kamp v. Goldstein*,
555 U.S. 335 (2009) ....................................................................9, 13

*Vann v. City of Southaven*,
884 F.3d 307 (5th Cir. 2018) ..........................................................32

*Walker v. Beaumont Indep. Sch. Dist.*,
938 F.3d 724 (5th Cir. 2019) ........................................................8, 9

*Walker v. Epps*,
550 F.3d 407 (5th Cir. 2008) ..........................................................31

*Wallace v. Kato*,
549 U.S. 384 (2007) ........................................................................30

*Wearry v. Foster*,
33 F.4th 260 (5th Cir. 2022)..............................................................9

*Webb v. Town of St. Joseph*,
925 F.3d 209 (5th Cir. 2019) ..........................................................16

*Webster v. City of Houston*,
735 F.2d 838 (5th Cir. 1984) ..................................................... 18, 21

*Woodfield v. Bowman*,
193 F.3d 354 (5th Cir. 1999) ..........................................................29

**Statutes**

28 U.S.C. § 1291 ..................................................................................1

28 U.S.C. § 1331 ..................................................................................1

28 U.S.C. § 1343(a)(3) ..........................................................................1

28 U.S.C. § 1738 ...................................................................... 8, 23, 24, 25

42 U.S.C. § 1983 ....................................................................... passim

Miss. Code Ann. § 15-1-49 ..................................................................30

Miss. Code Ann. § 21-23-3 ............................................................ 17, 27

Miss. Code Ann. § 21-3-15(2) ........................................................................16

Miss. Code Ann. § 21-3-5........................................................................ 17, 27

**Rules**

Fed. R. Civ. P. 12(c) ........................................................................ 4, 5, 26

Fed. R. Civ. P. 15(a)(2)........................................................................26

Fed. R. Civ. P. 72(a)........................................................................ passim

## STATEMENT OF JURISDICTION

The United States District Court for the Northern District of Mississippi had jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a)(3).

On February 2, 2026, the district court entered its Memorandum Opinion and Order, granting Defendants' Motion for Judgment on the Pleadings, denying Plaintiff's Motion for Partial Summary Judgment, overruling Plaintiff's Federal Rule of Civil Procedure 72(a) Objection, and dismissing all claims with prejudice. ROA.595; ROA.604. Arnold timely filed a Notice of Appeal on February 26, 2026. ROA.605. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Did the district court correctly dismiss this case?

## STATEMENT OF THE CASE

The judgment below should be affirmed. The district court correctly dismissed all of Plaintiff–Appellant Tracy Miller Arnold's claims on two independently sufficient legal grounds. It held that Defendant–Appellee Andrew Stuart's challenged conduct—appearing as an advocate for Defendant–Appellee the City of Guntown (the "City") in county-court trial and appellate proceedings and communicating (or not

communicating) with Arnold during the pendency of that appeal—was functionally prosecutorial and therefore shielded by absolute prosecutorial immunity. The court also held that Arnold failed to plead a viable *Monell* claim against the City because she identified no official policy or custom that was the "moving force" behind her alleged injuries and because Stuart—a city prosecutor appointed at the pleasure of the Board of Aldermen—is not a final policymaker under Mississippi law.

## I. Factual Background

In March 2017, the City of Guntown issued three traffic citations to Arnold for driving without a driver's license, driving with no tag, and failure to produce proof of valid insurance. ROA.34. Arnold was convicted in municipal court on all three charges, and fines totaling $1,463.75 were imposed. ROA.34. No jail time was sought.

Arnold appealed her convictions to the Lee County Court for a trial *de novo*. ROA.43. On April 11, 2018, a hearing was held in Lee County Court, at which Stuart appeared as the City's advocate. ROA.8. Between July 2022 and April 2023, while the appeal to the Lee County Court was pending, Arnold received a series of collection notices from American Municipal Services, a private collection agency acting on behalf of the

City, stating that arrest warrants had been issued and demanding payment of the previously imposed fines. ROA.9–10.

On June 8, 2023, the Lee County Court issued a Memorandum Opinion finding deficiencies related to delay and notice in the proceedings and ordering the warrants stricken. ROA.11–12. According to Arnold's Complaint, the Lee County Court found the charging documents constitutionally deficient and ordered the City to amend the complaints to provide adequate notice of the charges. ROA.8. On July 5, 2023, the Lee County Court dismissed all charges after the City filed no response to the court's order. ROA.11.

Arnold filed this federal action on February 18, 2025, asserting eight counts under 42 U.S.C. § 1983 (First Amendment retaliation, vindictive prosecution, due process, Fourth Amendment, malicious prosecution, Sixth Amendment speedy trial, Sixth Amendment notice, and *Monell* municipal liability) and seeking over $30,000,000 in damages plus declaratory and injunctive relief. ROA.6.

## II. Procedural Background

Arnold, proceeding pro se, filed this lawsuit against Stuart, individually and in his official capacity, and the City (collectively,

"Defendants") on February 18, 2025. ROA.6. After Defendants answered and raised their affirmative defenses, Arnold moved to strike those defenses and separately moved for partial summary judgment on official-capacity liability. ROA.116; ROA.140; ROA.177. The Magistrate Judge denied the motion to strike, holding that Defendants needed only to give "fair notice" of their affirmative defenses, and Arnold objected to that ruling under Rule 72(a). ROA.565; ROA.575.

Defendants moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing, among other things, that Stuart was entitled to absolute prosecutorial immunity and that Arnold had failed to plead a viable *Monell* claim against the City. ROA.482; ROA.485.

The district court ultimately resolved all pending matters in a single Memorandum Opinion and Order: it overruled Arnold's Rule 72(a) Objection and affirmed the Magistrate Judge's denial of the motion to strike, denied Arnold's motion for partial summary judgment, granted Defendants' motion for judgment on the pleadings, and dismissed all of Arnold's claims with prejudice. ROA.595; ROA.604. Arnold timely appealed. ROA.605.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's grant of judgment on the pleadings under Rule 12(c), applying the same standard as a Rule 12(b)(6) motion to dismiss. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The Court accepts all well-pled facts as true and views them in the light most favorable to the nonmoving party, but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified).

Furthermore, a district court's order overruling objections to a non-dispositive ruling by a magistrate judge ruling is reviewable only for abuse of discretion. *Alphonse v. Arch Bay Holdings, L.L.C.*, 618 F. App'x 765, 768 (5th Cir. 2015) (per curiam) ("We review a district court's discovery-related rulings for abuse of discretion . . . includ[ing] a decision to defer to a magistrate judge's discovery order."). We "will affirm such decisions unless they are arbitrary or clearly unreasonable." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000).

Importantly, this Court "affirm the district court on any grounds supported by the record and argued in the court below." *Farmers Tex. Cnty. Mut. Ins. Co. v. 1st Choice Accident & Injury, L.L.C.*, 168 F.4th 271, 278 (5th Cir. 2026).

## SUMMARY OF THE ARGUMENT

The district court's judgment rests on two independently dispositive grounds, each of which is correct.

*First*, Stuart is absolutely immune from suit. Prosecutorial immunity attaches to conduct that is functionally prosecutorial—regardless of whether the conduct was lawful and regardless of the prosecutor's subjective motive. Here, every act Arnold challenges falls squarely within Stuart's role as an advocate for the City in county-court appellate proceedings—namely, his appearance at the April 11, 2018 hearing and his handling of communications during the pendency of that appeal. The district court identified the specific conduct at issue, mapped them to the functional test from *Buckley v. Fitzsimmons*, and correctly concluded that immunity bars all individual-capacity claims. 509 U.S. 259 (1993). Arnold's contention that Stuart was performing "administrative" or "city-attorney" functions rather than prosecutorial

ones is foreclosed by Fifth Circuit precedent holding that absolute immunity extends to postconviction advocacy and to conduct during appellate proceedings.

*Second*, Arnold failed to plead a viable *Monell* claim against the City. Municipal liability under § 1983 requires proof that the municipality itself caused the alleged deprivation through an official policy or custom. Arnold has not identified either. Her theory that Stuart was a "final policymaker" whose single act can be attributed to the City fails by virtue of Mississippi statutory law. The Board of Aldermen—not the City Prosecutor—is the governing authority of a municipality, and a city prosecutor is an appointed official who serves at the Board's pleasure. No amount of additional factual pleadings or evidence can change what state law defines. Arnold's audit-based deliberate-indifference theory likewise fails because the audits identified a bookkeeping deficiency, not a pattern of prior constitutional violations.

Arnold's remaining assignments of error do not disturb either basis for dismissal. Her *McGruder* argument is irrelevant because even treating her summary judgment motion as an amendment to her complaint, the legal defects—immunity and policymaker status—are not

factual gaps that additional pleading could cure. Her 28 U.S.C. § 1738 preclusion argument confuses the question of whether a constitutional violation occurred with the separate § 1983 question of whether a particular defendant can be held civilly liable. And her challenge to the dismissal with prejudice fails because she never requested leave to amend below—a forfeiture that independently disposes of that assignment of error—and because amendment would have been futile in any event.

The district court's judgment should be affirmed in its entirety.

## ARGUMENT

### I. Stuart Is Entitled to Absolute Prosecutorial Immunity Because His Challenged Conduct Was Functionally Prosecutorial.

Prosecutorial immunity defeats the lawsuit against Stuart "at the outset." *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976). The doctrine does not depend on whether the prosecutor acted lawfully—it shields prosecutors "even if he or she acted maliciously, wantonly, or negligently." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 739 (5th Cir. 2019) (citation omitted); *Cousin v. Small*, 325 F.3d 627 (5th Cir. 2003) ("Wilful or malicious prosecutorial misconduct is egregious by

definition, yet prosecutors are absolutely immune from liability for such conduct if it occurs in the exercise of their advocatory function."). Arnold may well believe her constitutional rights were violated. But the question before this Court is not whether a violation occurred—it is whether Stuart can be held civilly liable for the conduct alleged. He cannot.

The functional immunity inquiry asks what the prosecutor was doing, not whether he was doing it well or lawfully. Acts "intimately associated with the judicial phase of the criminal process"—initiating a prosecution, presenting and evaluating evidence, appearing as an advocate—are absolutely protected. *Walker*, 938 F.3d at 739 (quoting *Van de Kamp v. Goldstein*, 555 U.S. 335, 342–43 (2009)); *Burns v. Reed*, 500 U.S. 478, 486 (1991) (prosecutors are absolutely immune "for their conduct in initiating a prosecution and in presenting the State's case" (citation modified)). A prosecutor's "charging decision" is protected. *Wearry v. Foster*, 33 F.4th 260, 266 (5th Cir. 2022). And evaluating and presenting already-gathered evidence before a judicial tribunal are quasi-judicial functions that qualify for absolute immunity. *Burns*, 500 U.S. at 492.

The district court applied this functional test to the specific conduct alleged. It identified the specific paragraphs from Arnold's Complaint targeted toward Stuart—¶¶ 4.2.7–4.2.14, 4.5.3, and 4.6.3—and determined that Arnold's "allegations against Stuart arise from appeal proceedings in the county court related to the Plaintiff's convictions for traffic offenses in municipal court." ROA.598. Specifically, Arnold alleges Stuart "appeared on behalf of and represented the City during the April 11, 2018, administrative and motion hearing in the Lee County Court" and that she "attempted to communicate with Stuart related to arrest warrants that were purportedly issued for her arrest, but that he never responded to her inquiries." ROA.598. These are quintessential "prosecutorial actions" that "fall squarely within the duties protected by prosecutorial immunity." ROA.598.

There was no error in the district court's analysis. Stuart's appearance at the April 11, 2018 hearing was the paradigmatic act of a prosecutor before a judicial tribunal in a pending criminal proceeding. The case was on appeal for trial *de novo*, and it remained an active criminal matter in which Stuart served as the prosecuting attorney. His appearance at that hearing was "preparing for the initiation of judicial

proceedings or for trial" and occurred "in the course of his role as an advocate for the State." *Buckley*, 509 U.S. at 273. Stuart's conduct is protected by *Buckley*.

And absolute immunity extends beyond trial and pretrial proceedings to postconviction and appellate advocacy. The Fifth Circuit held that, "[i]f the prosecutor continues his role as an advocate, absolute immunity extends to conduct during post-conviction proceedings." *Moon v. City of El Paso*, 906 F.3d 352, 359 (5th Cir. 2018). Stuart continued in that role. The appeal in county court was a postconviction proceeding in which Stuart represented the City's interest in maintaining the municipal court convictions. His conduct during the pendency of that appeal, including his communications (or lack thereof) with Arnold about the status of fines and warrants, falls within the scope of his advocacy function. *See Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009) (citing cases showing prosecutorial immunity extends to acts taken "apart from the courtroom"); *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994) ("Prosecutorial immunity applies to the prosecutor's actions in initiating the prosecution and in carrying the case through the judicial process.").

Arnold's contrary arguments fail. She contends that the district court skipped an "act-by-act" functional analysis and that Stuart's conduct was "administrative or city-attorney" in character rather than prosecutorial. Blue Br. at 2, 21–28. But the record refutes both arguments.

First, the district court did not skip the functional analysis. It identified the specific Complaint paragraphs relating to Stuart's complained-of conduct, described the conduct alleged therein, and held that those "prosecutorial actions fall squarely within the duties protected by prosecutorial immunity." ROA.598. The court then cited multiple binding cases setting out the functional prosecutorial immunity test before concluding that immunity applied. ROA.597–599. That is an "act-by-act functional analysis." Arnold's disagreement with the court's conclusion does not mean the analysis was not performed.

Second, Arnold's characterization of Stuart's conduct as "administrative" or "city-attorney" work rather than prosecutorial advocacy is belied by her own Complaint. The Complaint's operative paragraphs allege that Stuart appeared as the City's representative in a judicial proceeding on April 11, 2018, and that he handled

communications related to that ongoing criminal case. These are not activities of a mere municipal administrator managing budgets or zoning appeals. They are the activities of a prosecutor carrying a case "through the judicial process." *Boyd*, 31 F.3d at 285. The fact that Stuart may have simultaneously held the title of "City Attorney" in addition to "City Prosecutor" does not strip immunity from conduct that is functionally prosecutorial. The immunity inquiry focuses on what the official did, not what title he held. *Buckley*, 509 U.S. at 269 (looking to "the nature of the function performed, not the identity of the actor who performed it" (citation omitted)).

Arnold's attempt to recharacterize Stuart's failure to respond to her inquiries as "administrative neglect" rather than prosecutorial conduct fares no better. A prosecutor's decisions about whether and to what extent to communicate with a defendant during pending proceedings are exercises of prosecutorial discretion intimately tied to the judicial process. *See Van de Kamp*, 555 U.S. at 344 (holding prosecutors immune from claims related to "a certain kind of administrative obligation—a kind that itself is directly connected with the conduct of a trial"); *Quiroz v. Hernandez*, 167 F.4th 254, 269 (5th Cir. 2025) (same); *Singleton v.*

*Cannizzaro*, 956 F.3d 773, 783 (5th Cir. 2020) (evaluating evidence and making decisions about its presentation are quasi-judicial functions). Stuart had no obligation to serve as Arnold's personal liaison regarding the status of her case while he was simultaneously the City's advocate in that case.

Accordingly, the district court correctly held that Stuart is entitled to absolute prosecutorial immunity, and the individual-capacity claims against him were properly dismissed.

## II. There Is No *Monell* Liability Because the Board of Aldermen Have Final Policymaking Authority, not the City Prosecutor.

*Monell* liability requires proof that the municipality itself caused the constitutional deprivation through an official policy or custom. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Instead of respondeat superior liability, the alleged unconstitutional conduct "must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). To establish *Monell* liability, a plaintiff

must demonstrate three elements: (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Id.*

Arnold's Complaint fails to satisfy any of these requirements. The district court correctly held that Arnold "does nothing more than describe the judicial process that gave rise to her alleged injury"—an observation that is "insufficient to establish the first element of her claim." ROA.598–599. She has not identified any "policy statement, ordinance, regulation or decision that is officially adopted" by the City, *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000), or a "persistent, widespread practice of city officials or employees" so "common and well settled" that it constitutes "a custom that fairly represents municipal policy," *McGregory v. City of Jackson*, 335 F. App'x 446, 449 (5th Cir. 2009) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)). Arnold instead identifies a single sequence of events involving a single defendant, which describes a judicial process: traffic citations, a municipal conviction, an appeal, collection notices, and a dismissal. This falls well short of the "similarity and specificity" *Monell* requires.

*Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009); *see also Johnson v. Harris County*, 83 F.4th 941, 946–47 (5th Cir. 2023) (same).

Arnold nonetheless presses various theories of municipal liability on appeal, and each fails for one of two independent reasons. First, Stuart is not a final policymaker under Mississippi law, and, second, there are no facts showing a custom or ratification required by *Monell*.

**A. Stuart is not a final policymaker under Mississippi law.**

Arnold's reliance on the single-incident exception is unavailing because Stuart is not a final policymaker under Mississippi law. The single-incident exception permits *Monell* liability where a final policymaker commits the specific constitutional violation. *Webb v. Town of St. Joseph*, 925 F.3d 209, 215 (5th Cir. 2019). But the exception is available only if the official is, in fact, a "final policymaker," and that determination is "a question of state law," not fact. *Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016).

Mississippi law answers the question for this case. Under Mississippi law, Boards of Aldermen are the "governing authority" for a municipality, so the Board is the final policymaker for the City. Miss. Code Ann. § 21-3-15(2); *see also Sockwell v. Calhoun City*, No. 3:19-cv-4,

2019 WL 3558173, at *2 (N.D. Miss. Aug. 5, 2019). In contrast, a city prosecutor is an appointed position that is employed at the will and pleasure of the Board. *See* Miss. Code Ann. §§ 21-23-3, 21-3-5. Stuart, as the City Prosecutor, serves at the Board's pleasure. Rather than make policy for the City, he simply implements it.

Additional facts would not alter this outcome. The Supreme Court has "repeatedly emphasized" that policymaker status "is a question of law, not of fact"—not one resolved by examining a particular official's day-to-day conduct. *Groden*, 826 F.3d at 285 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)). According to the Mississippi legislature, municipalities are governed by their Boards of Aldermen, and city prosecutors are subordinate officials who serve at the Board's pleasure. No factual allegation or evidence can transform Stuart into a policymaker when state statute says otherwise.

Nor does Arnold's reliance on *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), and *Praprotnik*, 485 U.S. 112, help her. Both cases depend on the predicate that the relevant official held final policymaking authority for the type of action at issue. *See Pembaur*, 475 U.S. at 481 (liability attached because the county prosecutor had "final authority to

establish municipal policy"); *Praprotnik*, 485 U.S. at 127 (policymaking authority must be identified under state law). Here, that predicate is missing. Stuart is not a final policymaker under Mississippi law, and these cases therefore provide Arnold no path to municipal liability.

As the district court correctly concluded: "Essentially, the Plaintiff is arguing for respondeat superior liability, which does not apply to impose liability upon a municipality." ROA.601 (citing *Monell*, 436 U.S. at 694).

### B. Neither the audit findings nor Arnold's custom and ratification theories establish deliberate indifference or an official policy.

Arnold's remaining theories fare no better. Arnold attempts to establish municipal fault through a pattern of institutional by pointing to nine years of independent audit findings warning about a "significant deficiency" in the City's municipal court operations, a purported "no supervision" custom under *Webster v. City of Houston*, 735 F.2d 838 (5th Cir. 1984) (en banc), and the Board's alleged "ratification" of Stuart's conduct under *Praprotnik*. Each fails.

Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence

of his action." *Connick*, 563 U.S. at 61 (citation omitted). A pattern of similar constitutional violations is therefore "ordinarily necessary" because "[w]ithout notice" of a deficiency, "decisionmakers can hardly be said to have deliberately chosen" a policy that will cause constitutional harm. *Id.* at 62. This Court has likewise held that "[d]eliberate indifference is more than mere negligence," and that the prior acts relied upon must be "fairly similar to what ultimately transpired." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (citations omitted).

Arnold's showing does not come close. It is, in fact, weaker than the showing the Supreme Court rejected in *Connick* itself. There, the plaintiff pointed to four reversals for actual *Brady* violations in the ten years preceding his trial, and the Court still held that evidence insufficient because those violations were not sufficiently similar to the one alleged. *Connick*, 563 U.S. at 62–63. The audits at issue here do not identify a constitutional violation at all, similar or otherwise. They identify a bookkeeping segregation-of-duties deficiency—a single employee responsible for fine collections, docket entry, and warrant issuance—the type of finding a CPA flags for internal financial-control

purposes, not the type that puts a policymaker on notice that its municipal court will violate anyone's constitutional rights. Arnold does not allege that any other citizen suffered a constitutional deprivation because of this staffing arrangement, and she does not explain how the audit findings connect to any prior false arrest warrant, denial of due process, or other constitutional injury inflicted on anyone but herself.

Without a "pattern" of prior similar constitutional violations, there is no basis to infer that the City was deliberately indifferent to a known risk. The mere existence of an internal-control deficiency, even one that persisted for years, does not satisfy the demanding deliberate indifference standard. *See id.* at 61 (city policymakers must be "on actual or constructive notice that a particular omission" causes constitutional violations before deliberate indifference can attach).

Arnold's "no supervision" custom theory fails the same test from a different angle. A custom actionable under *Monell* requires "a persistent, widespread practice of City officials or employees" that is "so common and well-settled as to constitute a custom that fairly represents municipal policy," of which "[a]ctual or constructive knowledge . . . must be attributable to the governing body of the municipality or to an official to

whom that body has delegated policy-making authority." *Piotrowski*, 237 F.3d at 579 (quoting *Webster*, 735 F.2d at 841–42). "[I]solated unconstitutional actions by municipal employees will almost never trigger liability." *Id.* at 578. Arnold has identified only her own experience instead of persistent and widespread practices. And she has not alleged that the Board of Aldermen, the only body capable of holding policy-making authority under Mississippi law, had actual or constructive knowledge of any such practice. Her custom theory accordingly fails both the pattern requirement and the knowledge requirement that *Piotrowski* and *Webster* demand.

The ratification theory fails for a related reason. Municipal liability attaches under *Praprotnik* only where "the authorized policymakers approve a subordinate's decision and the basis for it"; only then does "their ratification" become "chargeable to the municipality because their decision is final." 485 U.S. at 127. Courts applying that rule have explained that a policymaker must knowingly approve both the subordinate's decision and its unconstitutional basis because only policymakers—not their subordinates—can create municipal liability under § 1983. *See Milam v. City of San Antonio*, 113 F. App'x 622, 626–

27 (5th Cir. 2004). A plaintiff must therefore "plead *facts* that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker." *Groden*, 826 F.3d at 282 (emphasis in original). Arnold has not alleged that the Board of Aldermen—the only entity with policymaking authority under Mississippi law—approved any decision by Stuart, much less the specific unconstitutional basis for it. Absent such an allegation, her ratification theory, like her custom theory, amounts to nothing more than respondeat superior liability dressed in different doctrinal clothing. *Id.* at 283 ("Municipalities are not liable for the unconstitutional actions of their employees under respondeat superior.").

None of Arnold's theories supplies *Monell* liability, which turns on attribution of the alleged violation to the municipality's own policy or custom. The district court correctly dismissed the municipal-liability claims, and this Court should affirm.

## III. Arnold's Arguments on Appeal Do Not Disturb the District Court's Purely Legal Rulings.

The district court's rulings were purely legal. Stuart's immunity turns on the prosecutorial function in a judicial proceeding, a characterization drawn entirely from the Complaint's own allegations.

*Supra* Part I. And the absence of the City's *Monell* liability turns on Mississippi statute, which vests final policymaking authority exclusively in the Board of Aldermen, not the City Prosecutor. *Supra* Part II. Arnold makes three more arguments, each with the same defect—that the district court should have treated her summary-judgment papers as amendments under *McGruder*, that the Lee County Court's findings are entitled to preclusive effect under § 1738, and that dismissal with prejudice was improper absent leave to amend. Each argument assumes that additional facts, materials, or findings could have changed the district court's legal conclusions that did not turn on facts at all. None can.

### A. *McGruder* does not disturb either ruling because additional facts cannot alter a legal conclusion.

*McGruder v. Phelps* held that, "in view of the liberality accorded to the pleadings of Pro se petitioners," a district court "should have treated the materials filed by plaintiff . . . , however denominated, as an amendment to his complaint or an addition in the nature of an amendment." 608 F.2d 1023, 1025 (5th Cir. 1979). Arnold invokes that rule to argue the district court erred by evaluating only the formal Complaint rather than treating her Motion for Partial Summary

Judgment and other filings as amendments. Even assuming the district court should have considered those additional materials—a proposition Appellees do not concede—the result would have been the same. Neither dispositive issue in this case turns on a lack of facts.

Stuart's function during the challenged conduct is fixed by what the Complaint itself alleges he did, appearing as an advocate in county-court proceedings. No volume of additional material changes that characterization. And the Board of Alderman being the City's final policymaker rather than its prosecutor is fixed by Mississippi statute, not by the evidence Arnold submits. Because *McGruder* speaks to what materials a court must consider, not to what legal conclusion those materials compel, it cannot rescue claims that fail as a matter of law regardless of the record's size.

**B. Section 1738 does not disturb either ruling for the same reason.**

Arnold's reliance on 28 U.S.C. § 1738 fares no better. Section 1738 requires federal courts to give state-court judgments the same preclusive effect they would receive in the courts of the rendering state. *See Allen v. McCurry*, 449 U.S. 90, 96 (1980). But even assuming the Lee County Court's finding that Arnold's due process rights were "at issue" is entitled

to preclusive effect, that finding addresses only whether a violation occurred. It does not, and could not, address the separate § 1983 question of civil attribution to a particular defendant. The Lee County Court never considered the legal questions presented in this case: whether Stuart's conduct was prosecutorial in function or whether the Board of Aldermen adopted a policy or custom.

At best, § 1738 might establish that Arnold's rights were violated—a proposition that, again, Appellees do not concede. It cannot establish who is civilly liable for that violation, and it certainly cannot manufacture the policy-or-custom element *Monell* requires or override Mississippi's statutory allocation of policymaking authority to the Board of Aldermen.

**C. Arnold forfeited any claim to leave to amend by never requesting it below.**

Arnold contends that the district court erred by dismissing with prejudice without granting leave to amend. This argument is independently foreclosed and waived by Arnold's own failure to seek such relief below.

Although operating pro se, Arnold demonstrated over more than a year of active litigation that she possesses both the knowledge and the

capacity to identify and file specific motions. She filed a Motion to Determine Need for Separate Counsel. ROA.72. She filed a Motion to Strike Affirmative Defenses. ROA.140. She filed a Motion for Partial Summary Judgment. ROA.177. She filed a Response and Memorandum in Opposition to the Rule 12(c) motion. ROA.526. And she filed a Rule 72(a) Objection to the Magistrate Judge's order. ROA.575. Arnold is clearly familiar with the procedural mechanisms available to her.

But at no point did Arnold file a motion for leave to amend under Federal Rule of Civil Procedure 15(a)(2). She never requested leave to amend in the alternative in her opposition to the Rule 12(c) motion. A plaintiff who never requests leave to amend below has forfeited any argument that the district court failed to grant relief she never sought. *See, e.g.*, *Masel v. Villarreal*, 924 F.3d 734, 749 (5th Cir. 2019) ("Our rule that arguments not raised below are waived on appeal applies with equal force to requests for leave to amend.").

Even if Arnold had requested leave to amend, the district court would have been justified in denying it on futility grounds. A court may deny leave to amend where the proposed amendment would not survive

a motion to dismiss. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

Here, both grounds for dismissal rest on legal principles that no additional factual allegation could overcome. Prosecutorial immunity turns on the function Stuart performed—appearing as an advocate in a judicial proceeding—and that function is already established by the Complaint's own allegations. No amount of additional detail about what happened at the April 11, 2018 hearing, or what Arnold's experience was during the pendency of the appeal, would change the functional characterization of Stuart's conduct. He was the prosecutor. He appeared in court. That is what immunity protects.

Similarly, policymaker status turns on Mississippi statute. Miss. Code Ann. §§ 21-23-3, 21-3-5. The Board of Aldermen is the governing authority; the City Prosecutor is an appointed subordinate. No factual allegation—however voluminous—can change what the Mississippi legislature has prescribed. Amendment would not create a viable Monell claim because the legal defect is structural, not factual.

Arnold's reliance on *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002), and *Bazrowx v. Scott*, 136 F.3d

1053 (5th Cir. 1998) (per curiam), is misplaced. Both cases addressed curable factual pleading deficiencies where additional facts might state a claim that the original complaint did not. And this Court in *Great Plains* in fact affirmed dismissal without leave to amend because the plaintiffs never "sought leave to amend in the district court" and "waived any error on this basis by failing to raise the issue in their brief on appeal." 313 F.3d at 329–30. Here, in addition to being waived or forfeited for the same reason, the defects are purely legal: immunity doctrine forecloses the individual claims, and state statute forecloses the policymaker theory. These are not gaps in pleading that more facts could fill.

Accordingly, none of Arnold's remaining assignments of error disturbs the purely legal grounds on which the district court entered judgment, and dismissal with prejudice was proper.

## IV. The District Court Did Not Abuse Its Discretion in Overruling Arnold's Objection to the Magistrate Judge's Denial of Arnold's Motion to Strike Affirmative Defenses.

Arnold next challenges the district court's order overruling her Rule 72(a) objection to the magistrate judge's denial of her Motion to Strike Defendants' Affirmative Defenses. The district court itself was required

to review the magistrate judge's non-dispositive order under the deferential "clearly erroneous or contrary to law" standard. Fed. R. Civ. P. 72(a). This Court, in turn, reviews the district court's order overruling that objection for abuse of discretion, and will affirm unless the decision was arbitrary or clearly unreasonable. *Alphonse*, 618 F. App'x at 768; *Moore*, 233 F.3d at 876.

The magistrate judge denied the Motion to Strike on the ground that "there is no basis for the relief the plaintiff seeks" because "a defendant is only required to give 'fair notice' of its affirmative defenses." ROA.565. The district court overruled Arnold's objection and affirmed, applying the "clearly erroneous or contrary to law" standard and finding "no error on the part of the Magistrate Judge," citing *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) (holding that "[m]erely pleading the name of the affirmative defense . . . may be sufficient"). ROA.602–603; *see also LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 399 (5th Cir. 2014); *Rogers v. McDorman*, 521 F.3d 381, 385–86 (5th Cir. 2008).

The district court's ruling is squarely supported by Fifth Circuit precedent. Federal Rule of Civil Procedure 8(c) requires only "fair

notice," and Defendants provided exactly that by identifying their affirmative defenses by name in their Answer. *Tauch*, 751 F.3d at 398. Arnold offers no basis for concluding that the district court abused its discretion in so ruling. Her disagreement with Fifth Circuit precedent that allows simply naming an affirmative defense does not render the district court's decision arbitrary or clearly unreasonable.

## V. This Court Has Multiple Other Grounds on Which It Can Affirm.

This Court may affirm a district court's judgment on any ground supported by the record, including grounds not reached below. *Farmers Tex. Cnty. Mut. Ins. Co.*, 168 F.4th at 278. Should this Court disagree with either dispositive ground identified above, three additional grounds independently support affirmance.

### A. Arnold's claims are time-barred.

Section 1983 claims in Mississippi are governed by a three-year statute of limitations. Miss. Code Ann. § 15-1-49; *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (holding "the length of the statute of limitations" for § 1983 claims "is that which the State provides for personal-injury torts"). The operative conduct Arnold challenges occurred at the April 11, 2018 hearing and during the issuance of collection notices in 2022. Arnold did

not file her Complaint until February 18, 2025. ROA.6. The April 2018 hearing occurred nearly seven years before suit was filed—well beyond the three-year limitations period. *See Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008) (holding limitations period for § 1983 claims "begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured" (citation modified)).

To the extent Arnold argues that her malicious prosecution and retaliatory prosecution claims did not accrue until the July 5, 2023 favorable termination under *Thompson v. Clark*, 596 U.S. 36 (2022), those claims are independently barred by prosecutorial immunity (as to Stuart) and the failure to plead a *Monell* theory (as to the City). The statute of limitations thus provides an additional, independent ground for affirmance as to all claims arising from the 2018 conduct.

### B. Stuart is alternatively entitled to Qualified Immunity

Even if prosecutorial immunity did not apply, Stuart would be entitled to qualified immunity ("QI"). QI shields government officials from liability unless the plaintiff demonstrates a violation of a clearly established constitutional right that "every reasonable official" would

have understood was unlawful. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation omitted). Arnold bears the burden of identifying authority that clearly established the specific right at issue. *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018).

The "clearly established" prong requires "authoritative" and "specific" precedent, drawn from (1) Supreme Court decisions, (2) Fifth Circuit decisions, or (3) a "robust consensus of persuasive authority." *Morgan v. Swanson*, 659 F.3d 359, 382 (5th Cir. 2011) (en banc). Arnold's brief does not identify any authority clearly establishing that a city prosecutor violates the Constitution by appearing as an advocate in appellate proceedings, by failing to respond to a defendant's inquiries during the pendency of an appeal, or by failing to prevent a collection agency from sending notices while a case is on appeal. This failure independently supports affirmance.

## CONCLUSION

For these reasons, the district court's judgment should be affirmed in full. Arnold's claims fail as a matter of law, and no further proceedings are warranted.

Respectfully submitted,

**PHELPS DUNBAR LLP**

By: *__/s G. Todd Butler______________*

G. Todd Butler (Miss Bar #102907)
Sonya Dickson (Miss. Bar #106284)
1905 Community Bank Way | Suite 200
Flowood, Mississippi 39232
Telephone: 601-352-2300
Facsimile: 601-360-9777
Email: todd.butler@phelps.com
sonya.dickson@phelps.com

-AND-

Patrick M. Judd (La. Bar #40415)
365 Canal Street | Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Facsimile: 504-568-9130
Email: patrick.judd@phelps.com

**ATTORNEYS FOR DEFENDANTS–APPELLEES**

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,074 words, excluding the parts of the brief exempted by Rule 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14-point Times New Roman font, and all footnotes are in 12-point Times New Roman font.

Dated: July 24, 2026.

BY: *_/s G. Todd Butler_*
G. Todd Butler

## CERTIFICATE OF SERVICE

I hereby certify that, on July 24, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system and e-mailed a copy to the following non-CM/ECF participant:

Tracy Miller Arnold
P.O. Box 864
Savannah, TN 38372
tracy.knightswife@gmail.com

*Pro se Plaintiff*

Dated: July 24, 2026.

BY: *<u>/s G. Todd Butler</u>*
G. Todd Butler



PD.63072791.3