No. 26-60123

**IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

TRACY MILLER ARNOLD,

*Plaintiff–Appellant,*

**v.**

CITY OF GUNTOWN, individual and official capacity; ANDREW STUART, individual and official capacity,

*Defendants–Appellees.*

**On Appeal from the United States District Court**
**Northern District of Mississippi**
**Civil Action No. 1:25-cv-24**

---

# REPLY BRIEF OF APPELLANT

---

Tracy Miller Arnold
Pro Se
PO Box 864
Savannah, Tennessee 38372
423-529-4335
tracy.knightswife@gmail.com

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1, Appellant Tracy Miller Arnold certifies that the following persons and entities have an interest in the outcome of this case:

1. Tracy Miller Arnold, Plaintiff-Appellant (pro se);
2. City of Guntown, Mississippi, Defendant-Appellee;
3. Andrew Stuart, individually and in his official capacity, Defendant-Appellee;
4. Phelps Dunbar, LLP, G. Todd Butler, Sonya C. Dickson, and Patrick M. Judd, counsel for Defendants–Appellees;
5. Judge Glen H. Davidson, Senior United States District Judge, United States District Court for the Northern District of Mississippi; and
6. Magistrate Judge David A. Sanders, United States Magistrate Judge, United States District Court for the Northern District of Mississippi.

Appellees' own Certificate of Interested Persons additionally discloses the Mississippi Municipal Liability Plan as an interested entity; Appellant has no independent basis to certify to that fact and notes it here for the Court's convenience only.

So CERTIFIED, this August 31, 2026

/s/ Tracy Miller Arnold
Tracy Miller Arnold
Pro Se
PO Box 864
Savannah, Tennessee 38372
423-529-4335
tracy.knightswife@gmail.com

# Table of Contents

CERTIFICATE OF INTERESTED PERSONS........................................i
TABLE OF AUTHORITIES..........................................................iii
INTRODUCTION......................................................................1
ARGUMENT..............................................................................2
I. THE COMPLAINT ALONE STATES PLAUSIBLE CLAIMS UNDER RULE 12(b)(6)/12(c)..........................................................................2
II. APPELLEES NARROW STUART'S CONDUCT FOR IMMUNITY BUT DISCLAIM IT FOR MONELL..................................................6
III. STUART'S DOMAIN-SPECIFIC AUTHORITY SATISFIES PEMBAUR.......................................................................................11
IV. APPELLEES SIDESTEP STUART'S OWN CONTESTED LITIGATION CONDUCT...............................................................17
V. APPELLEES' § 1738 ARGUMENT IGNORES STUART'S PERSONAL PRIVITY.......................................................................18
VI. THE CLAIMS ARE TIMELY UNDER THOMPSON...................20
VII. HARTMAN SUPPLIES THE CLEARLY ESTABLISHED LAW....25
VIII. FORFEITURE AND FUTILITY DO NOT SUPPORT DISMISSAL WITH PREJUDICE.........................................................................28
CONCLUSION........................................................................30
CERTIFICATE OF SERVICE..................................................32
CERTIFICATE OF COMPLIANCE...........................................33

# TABLE OF AUTHORITIES

**Cases**

Allen v. McCurry, 449 U.S. 90 (1980) .................................................... 19
Ashcroft v. Iqbal, 556 U.S. 662 (2009) ....................................................... 4
Bazrowx v. Scott, 136 F.3d 1053 (5th Cir. 1998) (per curiam) ................ 28
Blackledge v. Perry, 417 U.S. 21 (1974) .................................................. 27
Buckley v. Fitzsimmons, 509 U.S. 259 (1993) ........................................... 9
Caissie v. State, 254 So. 3d 849 (Miss. Ct. App. 2018) ............ 7, 20, 22, 26
Carswell v. Camp, 54 F.4th 307 (5th Cir. 2022) ...................................... 26
City of Canton v. Harris, 489 U.S. 378 (1989) ......................................... 11
Connick v. Thompson, 563 U.S. 51 (2011) ........................................ 16, 17
Doe v. Edgewood Independent School District, 964 F.3d 351 (5th Cir. 2020) ............................................................................................ 14
Doe v. MySpace, Inc., 528 F.3d 413 (5th Cir. 2008) ................................. 2
Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305 (5th Cir. 2002) ..................................................................................... 28
Groden v. City of Dallas, 826 F.3d 280 (5th Cir. 2016) ........................... 12
Hartman v. Moore, 547 U.S. 250 (2006) ...................................... 1, 25, 26
Heck v. Humphrey, 512 U.S. 477 (1994) ..................... 1, 20, 21, 22, 23, 24
Hitt v. State, 149 Miss. 718, 115 So. 879 (1928) ....................................... 8
Masel v. Villarreal, 924 F.3d 734 (5th Cir. 2019) ................................... 27
Monell v. Dep't of Soc. Servs. 436 U.S. 658 (1978) ...................................... ......................................................... 4, 6, 8, 11, 12, 17, 19, 20, 21, 22, 30
Moon v. City of El Paso, 906 F.3d 352 (5th Cir. 2018) ........................ 9, 10
Moore v. City of Grand Prairie, No. 4:12-CV-624-A (N.D. Tex. Mar. 21, 2013) ......................................................................... 1, 25, 26, 27
Nieves v. Bartlett, 587 U.S. 391 (2019) ................................................ 1, 26
Olivier v. City of Brandon, 607 U.S. ___ (2026) ....................... 1, 20, 21, 23
Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) ......................................................... 1, 5, 9, 11, 12, 13, 14, 15, 29
Singleton v. Cannizzaro, 956 F.3d 773 (5th Cir. 2020) ............................ 10
Sweetin v. City of Texas City, 48 F.4th 387 (5th Cir. 2022) ............... 14, 15
Thompson v. Clark, 596 U.S. 36 (2022) ....................... 1, 16, 20, 21, 22, 24
Van de Kamp v. Goldstein, 555 U.S. 335 (2009) ...................................... 10
Wearry v. Foster, 33 F.4th 260 (5th Cir. 2022) ........................................ 10

Woodfield v. Bowman, 193 F.3d 354 (5th Cir. 1999) ........................ 29, 30

**Statutes**

28 U.S.C. § 1738 ........................................................................ 18, 19, 20
Miss. Code Ann. § 15-1-49 .................................................................... 20
Miss. Code Ann. § 21-3-5 ...................................................................... 11
Miss. Code Ann. § 21-3-15(2) ................................................................ 11
Miss. Code Ann. § 21-23-3 .................................................................... 11
Miss. Code Ann. § 99-37-7 .................................................................. 7, 8

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................ 2, 5, 12
Fed. R. Civ. P. 12(c) .................................................. 2, 4, 5, 6, 14, 26, 27
Fed. R. Civ. P. 15(a)(2) ........................................................................ 27
Fed. R. Civ. P. 72(a) ........................................................................ 29, 30

**Other Authorities**

Miss. Att'y Gen. Op. No. 2015-00323, 2015 WL 6121930 (Sept. 18, 2015) ........................................................................................ 13
Br. for Resp'ts, Olivier v. City of Brandon, No. 24-993 .......................... 23
Tr. of Oral Arg., Olivier v. City of Brandon, No. 24-993 (Dec. 3, 2025) ......................................................................................... 23

# INTRODUCTION

Appellees' brief affirms the district court by never answering the arguments that mattered most below. It does not mention *Pembaur v. City of Cincinnati* except to distinguish it on a predicate never argued. Where it addresses *Thompson v. Clark*, it argues around the point rather than answering it, and it does not mention *Heck v. Humphrey* or *Olivier v. City of Brandon* despite premising its limitations argument on accrual in 2018 and 2022. It does not engage *Hartman v. Moore* or the *Nieves* distinction in its qualified-immunity argument. Silence on controlling authority is not a rebuttal of it.

What remains is a brief that wins only if this Court accepts a narrower version of the record than the Complaint itself alleges, and only if it lets Appellees argue Stuart's conduct was purely "advocacy" for immunity purposes in Part I while treating that same conduct as beneath any policymaking significance in Part II. Both cannot be true. Reversal is required.

# ARGUMENT

## I. THE COMPLAINT ALONE STATES PLAUSIBLE CLAIMS UNDER RULE 12(b)(6)/12(c)

Before reaching any of the specific doctrines below, one point governs all of them: Appellees' brief repeatedly treats questions of *fact*, well pleaded in the Complaint and required to be accepted as true at this stage, as if they were pure questions of law already resolved against Arnold. They are not. Rule 12(c) is decided under the same standard as Rule 12(b)(6): the court accepts all well-pled facts as true and asks whether they state a plausible claim. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); Appellee Br. 5. Arnold's Complaint, without any resort to *McGruder* or the Partial Summary Judgment record, already satisfies that standard on its face.

The Complaint does not merely recite legal conclusions. It pleads, with dates, dollar figures, and admissions attributed to named parties: that at the April 11, 2018 hearing,[1] immediately after Arnold stated she would take the

[1] The Complaint dates this exchange to April 11, 2018. ROA.8. The record establishes that date as a drafting error: the exchange occurred at the January 10, 2018 hearing, the first hearing following Arnold's October 2017 trial de novo appeal. ROA.353 (Tr. at 41:17-22); ROA.391 (Bill Arnold Aff.); ROA.392 (Tracy Arnold Aff.). Arnold corrects the record for transparency. The correction does not affect the analysis below; it was just 3 month from de novo to jail escalation instead of 6.

case to the United States Supreme Court, the City moved from offering to resolve the matter for the cheapest available fine to affirmatively pursuing jail time, with no change except Arnold's exercise of her right to trial de novo, ROA.8; that the Lee County Court found Arnold was not properly notified of the charges and ordered the City to amend and to communicate with her, and that the City did neither for five years, ROA.8–9; that in 2022 the City, through AMS, sent Arnold four separate notices asserting arrest warrants and a $1,436.75 debt while the case remained on appeal, ROA.9–10; that the City told Arnold directly it had "no method for tracking whether a case was on appeal," ROA.9; that after Arnold's April 2023 Petition to Dismiss documented these violations, the City's only response was a motion to set the matter for trial that also sought maximum jail time, sworn to state that the City "knows of no reason why the cause should not be tried," without addressing any of the violations Arnold had raised, ROA.10–11; that the Lee County Court's June 8, 2023 opinion nonetheless confirmed the City had been notified, had done nothing for over five years, and ordered the warrants "stricken immediately," giving the City ten days to show it had complied with the 2018 amendment order, ROA.11; and that the City filed no response at all, leading to dismissal on July 5, 2023, ROA.11–12. These are not "threadbare recitals" of the elements of a cause

of action, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); they are the kind of particularized, dated, sourced factual allegations *Iqbal* and *Twombly* require, and Appellees' brief does not argue otherwise as to any specific paragraph.

Critically, the Complaint itself pleads the fact Appellees' *Monell* argument, *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978), spends its entire brief denying: "At all relevant times, Defendant Andrew Stuart was acting as the final policymaker for the City of Guntown regarding litigation matters, with authority to establish and implement municipal policies regarding prosecution and enforcement of municipal matters." ROA.7; see also ROA.8 ("Andrew Stuart, the City's Attorney, is the City's final policy maker in regards to anything related to litigation"); ROA.18 ("Guntown, through its agents and final policymaker Andrew Stuart, directed the issuance of arrest warrants"); ROA.22 (same, as to "litigation matters"). At the 12(c) stage, that allegation must be accepted as true. Appellees' response, that Mississippi statute makes the Board of Aldermen the City's "governing authority," Appellee Br. 16–17, responds to a different question. A statute assigning general governing authority to a Board does not foreclose, as a matter of law, a well-pled factual allegation that the Board delegated final, domain-specific authority over prosecution

and enforcement decisions to Stuart, which is precisely the theory *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), recognizes: the relevant county prosecutor in *Pembaur* was not the county's general policymaker either. *Id.* at 480–81. Appellees ask this Court to resolve, as a matter of law at the pleading stage, a question the Complaint pleads as fact. That is legal error independent of anything *McGruder* adds.

The posture here is also not a bare pre-answer 12(b)(6) motion. Appellees answered first, raising twenty affirmative defenses, before moving for judgment on the pleadings. ROA.116 et seq. Their Answer's own admissions are part of the record a Rule 12(c) court must credit. Notably, Appellees' Answer did not deny the content of the AMS collection notices, stating only that the notices "speak for themselves." Opening Br. 10 (Arg. IV.A). A defendant who chooses to answer rather than move to dismiss before answering, and whose answer does not dispute the operative facts, cannot then obtain dismissal by asking the court to treat those same undisputed facts as legally irrelevant. Appellees' brief does not address this distinction, treating the case as though it arrived at 12(c) in pre-answer 12(b)(6) posture, when the Answer independently confirms the facts Arnold pled.

None of this requires reaching *McGruder* or the Partial Summary Judgment record, which remain available as an additional ground for

reversal under Argument I of Arnold's opening brief. That ground is stronger than an unaddressed motion sitting on a docket: Appellees' counsel were served the complete motion, memorandum, and exhibits by certified mail on June 6, 2025, seventeen days before they responded. ROA.183. Their response contested none of it, arguing only that Arnold would lose as a matter of law regardless. ROA.499–503. The district court denied the motion seven months later, in the same order granting dismissal, without ever engaging that uncontested record. ROA.604. But this Court can reverse on the Complaint's own face, crediting only what Rule 12(c) requires it to credit, without resolving any factual dispute Appellees have not actually raised.

## II. APPELLEES NARROW STUART'S CONDUCT FOR IMMUNITY BUT DISCLAIM IT FOR MONELL

Appellees' brief confines "the challenged conduct" to two acts: Stuart's appearance at the April 11, 2018 hearing, and his failure to respond to Arnold's inquiries during the appeal. Appellee Br. 8–13. That framing is not drawn from the full Complaint; it is drawn from three paragraphs the district court selected. ROA.598 (citing ¶¶4.2.7–4.2.14, 4.5.3, 4.6.3). It omits Count 4 of the Complaint itself, which independently alleges that

"Guntown, through its agents and final policymaker Andrew Stuart, directed the issuance of arrest warrants against Plaintiff despite knowing the case was pending on appeal," ROA.18, and that Stuart, "as final policymaker, directly participated in constitutional violations by escalating to jail threats after appeal, refusing to amend complaints as ordered by the court, and maintaining enforcement efforts without jurisdiction," ROA.22. Arnold's Complaint and the record before the district court also allege Stuart's direction of the AMS collection referral, his maintenance of warrants the Lee County Court found jurisdictionless, and his five-year non-compliance with the April 2018 order to cure the charging documents. Opening Br. 14–15 (Arg. II.B). Appellees' brief does not mention any of these acts, or Count 4, in its immunity argument at all.

The warrants' lack of jurisdiction does not rest on Judge Spencer's finding alone; it follows independently from the statute Stuart himself invoked as authority in his own 2015 Attorney General request (see Part III below). Miss. Code Ann. § 99-37-7 permits such a warrant only where a defendant "sentenced to pay a fine . . . defaults," a predicate that requires an existing, final sentence. Under Mississippi law, a perfected trial de novo appeal is treated "as if there had never been a trial" in the municipal court; it does not merely stay the municipal judgment; it supersedes it entirely. *Caissie v. State*,

254 So. 3d 849, 852 (Miss. Ct. App. 2018) (quoting *Hitt v. State*, 149 Miss. 718, 115 So. 879, 883 (1928)). Arnold's trial de novo divested the Municipal Court of any final sentence to default on from October 2017 forward, and that appeal remained pending throughout the 2022 conduct at issue. No final sentence existed to satisfy § 99-37-7's own predicate while Arnold's appeal was pending. The warrants Stuart maintained and the collection referral he directed during that period lacked statutory authority independent of, and in addition to, the county court's own finding to the same effect.

Appellees' omission of those acts is necessary to their position, creating an internal contradiction that runs through their brief. Appellees argue that Stuart is not a *Monell* policymaker because he "simply implements" municipal policy rather than making it. Appellee Br. 17. If Stuart merely implemented a municipal policy, then a municipal policy drove this conduct, set by an official Appellees never identify. But the specific things Stuart is alleged to have decided (whether to comply with a court order, whether to refer a defendant to a private collection agency for arrest-backed collection, whether to maintain warrants during an appeal) are administrative and enforcement decisions, not advocacy performed before a tribunal. Appellees cannot have it both ways: either these acts are prosecutorial advocacy

entitled to absolute immunity, in which case Stuart was exercising the kind of authority over enforcement and collection practice that supports *Pembaur* liability against the City, see Part III below; or they are administrative acts outside the advocacy function, in which case *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993), affords Stuart no immunity for them at all. Appellees pick whichever label defeats the claim and never reconcile the two.

*Buckley* requires an act-by-act functional analysis, looking to "the nature of the function performed, not the identity of the actor who performed it," not what proceeding the conduct was nominally connected to. *Id.* at 269. Appellees' response (Appellee Br. 12–13) does not conduct that analysis for the AMS referral, the warrant maintenance, or the five-year non-compliance; it argues only that the district court's analysis of the two acts it did address was sufficient. That argument, even if correct as to those two acts, does not extend immunity to the three it never discusses. This Court should hold, at minimum, that dismissal on immunity grounds cannot reach claims arising from the AMS referral, the warrant maintenance during the pendency of the appeal, and the five-year non-compliance with the April 2018 order, because Appellees have offered no functional analysis of any of them.

Appellees do cite authority for this conduct, but it does not supply the missing analysis. *Moon v. City of El Paso*, 906 F.3d 352, 359 (5th Cir.

2018), extends immunity "if the prosecutor continues his role as an advocate," a conditional that assumes the very question in dispute rather than answering it. Appellee Br. 11. *Moon* states the converse in the same passage: "a prosecutor does not enjoy absolute immunity when performing administrative or investigative functions, or when his role as an advocate has concluded." *Id.* And *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009), immunized administrative conduct precisely because it was "directly connected with the conduct of a trial," distinguishing it from ordinary "administrative duties concerning, for example, workplace hiring, payroll administration, [and] the maintenance of physical facilities." Appellee Br. 13. Referring a fine to a collection agency and maintaining warrants during a perfected de novo appeal fall on the payroll-and-hiring side of that line: there was no trial to connect to, because the municipal judgment they purport to enforce had already been superseded. Appellees' own authority requires the act-by-act analysis they never perform. Two more of Appellees' own cases cut the same way. *Wearry v. Foster*, 33 F.4th 260 (5th Cir. 2022), Appellee Br. 9, did not grant immunity for a prosecutor's evidence fabrication and witness coercion; it affirmed the denial of absolute immunity for that investigative misconduct and let the claim proceed. *Singleton v. Cannizzaro*, 956 F.3d 773 (5th Cir. 2020), Appellee Br. 14, affirmed denial

of absolute immunity to a district attorney's office for coercive out-of-court conduct, expressly rejecting the argument that such conduct was protected "evaluating evidence." Appellees cite both for a general standard, not for the result either case actually reached.

## III. STUART'S DOMAIN-SPECIFIC AUTHORITY SATISFIES PEMBAUR

Appellees' *Monell* argument (Appellee Br. 14–22) rests on a single proposition: that under Mississippi statute, the Board of Aldermen, not the City Prosecutor, is the City's final policymaker. Miss. Code Ann. §§ 21-3-15(2), 21-23-3, 21-3-5. That proposition goes only to Argument IV.A of Arnold's opening brief. It does not reach Argument IV.B.

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), does not require that an official be the municipality's general policymaker. It holds that a single decision by an official who possesses "final authority to establish municipal policy with respect to the action ordered" is municipal policy in that domain, even where the official is not the general policymaker and even absent a broader custom. *Id.* at 480, 483–84; *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting and adopting this same formulation as the governing rule for municipal liability). Appellees address

*Pembaur* in two sentences of their Monell-merits argument, asserting only that both cases "depend on the predicate that the relevant official held final policymaking authority for the type of action at issue" and that "here, that predicate is missing." Appellee Br. 17–18. That is not a rebuttal; it is a restatement of the general-policymaker argument dressed as a *Pembaur* argument. *Pembaur*'s predicate is domain-specific final authority, not general final authority, and Appellees never explain why the record evidence of Stuart's domain-specific authority over enforcement and collection decisions fails that narrower test. Appellees also cite *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016), for the proposition that policymaker status is "a question of law," not resolved by an official's conduct. Appellee Br. 16–17. That resolves the general-policymaker question, not *Pembaur*'s distinct, domain-specific inquiry into where final authority actually rests. Appellees never explain why a pleaded delegation would be disregarded at the pleading stage. If anything, *Groden* cuts the other way: it reversed a Rule 12(b)(6) dismissal on this exact ground, holding that a plaintiff need only plead facts showing a policy was promulgated or ratified by *some* legally authorized policymaker, not the policymaker's specific identity. 826 F.3d at 284–85. Arnold's complaint does that here.

That evidence is substantial and record-based, not speculative. City personnel directed Arnold to Stuart as the final word on court-paperwork and litigation questions across 2017 and 2022. ROA.391–392. Stuart's own public filings confirm the domain: in a 2015 request to the Mississippi Attorney General, made "in [his] capacity as municipal court prosecutor," Stuart asked whether the Municipal Court could issue an arrest warrant against a defendant whose fine had been referred to a private collection agency. Miss. Att'y Gen. Op. No. 2015-00323, 2015 WL 6121930 (Sept. 18, 2015). A line prosecutor answerable to a City Attorney does not personally develop a municipality's warrant-and-collection enforcement practice; the official who does is the final decisionmaker in that specific domain, whatever his title. Opening Br. 20–21. The non-compliance decision, the AMS referral, and the warrant maintenance were Stuart's decisions in that domain. Under *Pembaur*, they are the City's, independent of whether Stuart is also the City's general final policymaker, which Arnold has never argued. Appellees separately argue Arnold identifies no official policy and no moving-force causation, Appellee Br. 14–16, but that restates the same dispute: under *Pembaur*, a single decision by the official with final authority in the domain is the policy, and Stuart's decisions caused the warrants and referral Arnold challenges.

This is the second time Appellees have dropped this argument. Below, Appellees argued that "Arnold mistakes final policymaking with decision making," citing *Doe v. Edgewood Independent School District*, 964 F.3d 351, 366 (5th Cir. 2020), and *Sweetin v. City of Texas City*, 48 F.4th 387, 393 (5th Cir. 2022), for the proposition that operational decisionmaking authority is not policymaking authority. ROA.491 (12(c) Mem.). Arnold's opposition answered with *Pembaur*'s own language: the county prosecutor there was, in the Court's words, "acting as the final decisionmaker for the county" precisely because he held final authority over the specific action at issue, not because he held any general policymaking role. 475 U.S. at 485; ROA.552 (12(c) Opp.). Appellees' reply below did not answer that point; it did not cite *Doe*, *Sweetin*, or *Pembaur* again, and argued instead that Arnold's claim was mere "negligence" by a City employee. ROA.572 (12(c) Reply). Appellees' brief on this appeal does not raise *Doe* or *Sweetin* either. Even if that distinction had force, it does not fit this record: *Doe* and *Sweetin* involved officials implementing another's policy in the routine course of duty. Arnold does not allege that Stuart implemented anyone else's policy on enforcement, warrant maintenance, or collection referral; she alleges, and the record supports, that no one else set one, and that Stuart's

decisions were the only policy that existed on those subjects. That is *Pembaur*, not *Doe* or *Sweetin*, and Appellees never explain why.

Appellees' *McGruder* response confirms why this matters and why it was error to resolve it on the pleadings. Appellees argue that no volume of additional material changes the outcome because "the Board of Alderman being the City's final policymaker rather than its prosecutor is fixed by Mississippi statute, not by the evidence Arnold submits." Appellee Br. 24. That is true of the general-policymaker question. It is not true of the *Pembaur* question, which asks whether the Board delegated final authority over enforcement and collection decisions to Stuart. *Pembaur* itself holds that final policymaking authority "may be delegated by an official who possesses such authority," and that whether the delegating official, here the City, held that authority "is a question of state law." 475 U.S. at 483 & n.12. The City's delegation of that authority to Stuart is what the record shows as fact through the "ask Andrew first" evidence and the City directing Arnold to Stuart regarding the warrants, evidence the district court never reached because it treated the Complaint alone as the universe of allegations. Opening Br. 4–7 (Arg. I). Appellees' own framing of *McGruder* (that additional facts cannot change a purely legal conclusion) is correct for

Argument IV.A and wrong for Argument IV.B, without distinguishing the two.

That proposition reaches only IV.A's policymaker predicate, leaving its deliberate-indifference merits untouched. Appellees do not dispute that the Board received nine consecutive years of audit findings identifying the precise deficiency, unsupervised concentration of fine-collection, docket-entry, and warrant-issuance authority in a single employee, that produced the violations against Arnold. Appellee Br. 18–20 characterizes this only as "a bookkeeping segregation-of-duties deficiency" and argues *Connick v. Thompson*, 563 U.S. 51 (2011), requires a "pattern of similar constitutional violations," not an audit finding. But *Canton*'s deliberate-indifference theory does not require a prior pattern of *identical constitutional violations* where the risk is otherwise obvious; it asks whether the inadequacy is "so obvious" that the policymaker's inaction is itself the deliberate choice. *Canton*, 489 U.S. at 390. *Connick* reviewed a jury verdict for evidentiary sufficiency after a full trial; it set no pleading standard, and Appellees cite no case dismissing a deliberate-indifference claim on the pleadings where nine years of specific notice were alleged. Nine consecutive years of the same warning, addressed by the City only on its revenue-protecting half and never on its warrant-and-

tracking half, is not the single-incident showing *Connick* rejected; it is repeated, documented notice ignored on the same axis year after year.

Appellees do address the ratification theory (Opening Br. 22, Arg. IV.C) and the *Webster* custom theory (Opening Br. 22–23, Arg. IV.D), Appellee Br. 20–22, but only by asking whether the Board of Aldermen had knowledge of a pattern or approved Stuart's conduct. Both arguments assume that only the Board's knowledge and approval can count, the same general-policymaker premise rebutted above: if Stuart himself held final authority in this domain, his own conduct and knowledge satisfy custom and ratification directly. This Court should reverse the *Monell* dismissal at least as to Arguments IV.B, IV.C, and IV.D, each of which rests on a premise Appellees never establish.

## IV. APPELLEES SIDESTEP STUART'S OWN CONTESTED LITIGATION CONDUCT

Appellees' brief repeatedly narrows Stuart's conduct to a single question: whether any authority "clearly establish[es] that a city prosecutor violates the Constitution by… failing to respond to a defendant's inquiries during the pendency of an appeal." Appellee Br. 32; see also Appellee Br. 14 ("Stuart had no obligation to serve as Arnold's personal liaison"). That framing

responds to a claim Arnold has not made. Arnold does not allege a freestanding duty to answer correspondence. She alleges that Stuart personally and adversarially contested the Lee County Court order, moving for eighteen months' imprisonment, ROA.31; that Spencer then found the warrants void and ordered them stricken; that the findings and a ten-day show-cause directive were served on Stuart by name; and that Stuart, having lost that contest, filed nothing, sought no reconsideration or appeal, while the City's AMS referral and warrant maintenance ran from 2022 until dismissal. ROA.11–12, 18–19. That is not silence in the face of an inquiry; it is a litigant who fought an issue, lost, and let the loss become final without ever correcting the enforcement conduct the loss condemned. The silence Appellees defend is evidence of deliberate indifference to that conduct, not the violation standing alone. Appellees' brief does not engage this sequence anywhere.

## V. APPELLEES' § 1738 ARGUMENT IGNORES STUART'S PERSONAL PRIVITY

Appellees argue that the Lee County Court's findings, even given preclusive effect, address only "whether a violation occurred," not "the separate § 1983 question of whether a particular defendant can be held

civilly liable." Appellee Br. 8, 24–25. That distinction has force against a stranger to the state proceeding. It has none against Stuart.

*Allen v. McCurry*, 449 U.S. 90 (1980), asks whether the party to be precluded was a party or in privity with a party who actually litigated the issue, with a full and fair opportunity to do so. Stuart was not a bystander to the Lee County Court proceeding: he personally contested it, moving for eighteen months' imprisonment, and received Judge Spencer's adverse findings and show-cause directive by name, then filed nothing. See Part IV above; ROA.31, 41, 43, 101–102. Under Mississippi preclusion principles, privity exists where a non-party's interests were fully represented and the non-party had a full and fair opportunity to contest the issue, precisely Stuart's position here. Opening Br. 24 (Arg. V.B). Appellees' brief does not mention Stuart's personal litigation conduct, his personal receipt of the adverse findings, or his decision not to appeal them anywhere in its § 1738 argument. It resolves a version of the preclusion question that assumes the findings bind only "the City" in the abstract, and never reaches the individual-attribution question Arnold actually raised: that Stuart himself contested these findings, received them, and let them stand.

Appellees are correct that § 1738 cannot manufacture the *Monell* policy-or-custom element by itself. Opening Br. 22–23 does not ask it to; the

*Monell* element is independently satisfied under Part III above. What § 1738 forecloses is Appellees' ability to relitigate, seven years later and without ever having appealed, whether the notice, delay, and warrant violations occurred at all. Just as *Heck v. Humphrey* bars a plaintiff from using § 1983 to undo an intact, unappealed conviction, § 1738 bars a defendant who contested and lost an issue in state court, and did not appeal, from relitigating that same issue in federal court. Opening Br. 23 (Arg. V.C). Appellees' brief does not dispute the inverse-*Heck* symmetry; it does not mention it.

## VI. THE CLAIMS ARE TIMELY UNDER THOMPSON

The pattern is the same one this Court can already see in Part III above: an argument Arnold rebutted below with authority Appellees have never answered, at any stage, dropped again on appeal. ROA.491–492, 552, 572.

Appellees argue that Arnold's claims accrued at the April 11, 2018 hearing and during the issuance of collection notices in 2022, and are therefore time-barred under the three-year period in Miss. Code Ann. § 15-1-49. Appellee Br. 30–31. Appellees do not mention *Heck v. Humphrey*, 512 U.S. 477 (1994); they do not mention *Olivier v. City of Brandon*, 607 U.S. ___ (2026); and they do not mention *Caissie*'s rule that a perfected trial

de novo appeal supersedes the municipal judgment entirely. 254 So. 3d at 852. Either the 2018 conduct was *Heck*-barred until Arnold's conviction was undone, so it did not accrue until 2023, or it was not *Heck*-barred, so *Olivier*'s comity rationale never applied to it. Appellees never say which.

Those omissions are not incidental. Arnold's opening brief argued, as its sixth issue, that favorable termination is an element of the retaliatory-prosecution and malicious-prosecution torts, not merely a *Heck* bar, under *Thompson*, and that a claim missing a required element does not accrue. Opening Br. 25–26 (Arg. VI.A). Because the county-court prosecution was a single, continuous proceeding from Arnold's October 2017 appeal through its July 5, 2023 dismissal, Arnold had no complete cause of action for those claims until that dismissal. Her February 18, 2025 complaint followed nineteen months later, well within the three-year period. Appellees address *Thompson* only to avoid it: "To the extent Arnold argues that her malicious prosecution and retaliatory prosecution claims did not accrue until the July 5, 2023 favorable termination under *Thompson v. Clark* … those claims are independently barred by prosecutorial immunity (as to Stuart) and the failure to plead a *Monell* theory (as to the City)." Appellee Br. 31. Appellees do not contest accrual; they argue only that timeliness is beside the point because immunity and *Monell* independently win. Appellees present their

statute-of-limitations argument as an "independent" ground for affirmance, Appellee Br. 30, but their own brief limits it further still: the statute of limitations, they write, provides a ground for affirmance "as to all claims arising from the 2018 conduct." Appellee Br. 31. By their own words, that ground does not reach the 2022–2023 AMS notices, and their response to *Thompson* concedes the 2018-conduct claims are not independently time-barred either: they stand or fall with the immunity and *Monell* arguments this reply has shown are unsupported. This Court should hold Appellees to their own words and treat all of Arnold's claims as timely.

The same is true of Appellees' silence on Affirmative Defense #17. Arnold's opening brief demonstrated that Defendants' own *Heck* defense fails on its own premise, because *Heck* presupposes an intact, existing conviction, and Arnold's municipal conviction was superseded by her trial de novo under *Caissie* and then eliminated by the July 2023 dismissal, which followed from the City's failure to cure its fatally deficient charging documents, not from any ruling reaching the merits of a valid charge. Opening Br. 26 (Arg. VI.B). Appellees do not defend the *Heck* affirmative defense anywhere in their brief, on the merits or otherwise; their statute-of-limitations argument at Appellee Br. 30–31 does not invoke *Heck* even as an alternative accrual theory. If Appellees no longer press *Heck* as a bar, this

Court should say so and treat the point as conceded, resolving Argument VIII's challenge to Affirmative Defense #17 in Arnold's favor on that basis alone.

This silence is not the product of unfamiliarity with *Olivier*. Appellees were represented by the same counsel who appeared for the City of Brandon in *Olivier v. City of Brandon,* No. 24-993, and the position urged there is the position their brief here declines to defend. The Court rejected the broad reading of *Heck*: *Heck* does not bar a suit for purely prospective relief "notwithstanding [the plaintiff's] prior conviction." *Olivier*, 607 U.S. ___, slip op. at 1 (2026). That holding independently confirms Arnold's Argument VII request for injunctive and declaratory relief, Opening Br. 26, which Appellees never address anywhere in their brief. The *Olivier* respondents also explained *Heck's* purpose as "making plaintiffs resort to state court litigation," Tr. of Oral Arg. 70, and described a premature claim as one that "has not yet arisen" and "is not cognizable" until favorable termination, Br. for Resp'ts 9, 27. Arnold satisfies that premise. She pursued her trial de novo until the Lee County Court found the charging documents deficient, ordered a cure, and received none for five years, ending in dismissal on July 5, 2023 because Guntown never produced a valid charge, not because any court ruled against her. ROA.8–9, 11–12. It was Guntown,

not Arnold, that let that process run five years uncorrected. Appellees now argue Arnold sued too late. *Heck's* deferred-accrual rule, which *Thompson* reaffirms, exists so that no plaintiff is told both.

Finally, even under Appellees' own accrual theory, their brief does not address Argument VI.C's independent point that the First Amendment retaliation and Fourth Amendment void-warrant claims carry independent 2022–2023 accrual dates tied to the AMS collection notices of July 6, 2022, October 6, 2022, January 9, 2023, and April 13, 2023, each within three years of the February 18, 2025 complaint regardless of which accrual theory governs the earlier conduct. Opening Br. 27 (Arg. VI.C); ROA.507; ROA.533–34. Appellees' timeliness argument addresses the April 2018 hearing and generically "the issuance of collection notices in 2022," Appellee Br. 30, but never the specific 2022–2023 dates or why each notice's claim, within three years of the complaint, would be time-barred. Nor do they address Stuart's April 2023 decision to seek Arnold's maximum imprisonment rather than comply with the standing 2018 amendment order, ROA.31, a fresh, discrete act, not a continuation of 2018 conduct, that falls within the limitations period regardless of the 2018 dispute. If a reasonable person would have recognized the 2018 conduct as actionable, as Appellees' own accrual theory assumes, the same standard makes the 2023 escalation,

made with actual judicial notice of the warrants' invalidity, at least as obviously actionable.

## VII. HARTMAN SUPPLIES THE CLEARLY ESTABLISHED LAW

Appellees devote two short paragraphs to qualified immunity as an alternative ground, asserting that Arnold's brief "does not identify any authority clearly establishing that a city prosecutor violates the Constitution by appearing as an advocate in appellate proceedings, by failing to respond to a defendant's inquiries during the pendency of an appeal, or by failing to prevent a collection agency from sending notices while a case is on appeal." Appellee Br. 32. That description does not correspond to the claims Arnold's opening brief actually pressed under Argument III.

Arnold's clearly-established authority for the retaliatory-prosecution claim is *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006), which sets out the elements: protected conduct, adverse action, retaliatory animus as a but-for cause, and lack of probable cause, each independently supported on this record by the transcript admission that the January 2018 jail request was Stuart's first in five years, ROA.353 (Tr. at 41:17-22); by the escalation to an eighteen-month imprisonment motion immediately after Arnold's 2023

constitutional petition, ROA.31; and by Judge Spencer's finding that the warrants were jurisdictionless, which independently forecloses probable cause. Opening Br. 15–16 (Arg. III.B). Appellees' brief does not cite *Hartman* anywhere. It does not address the *Nieves* distinction Arnold's opening brief anticipated at Argument III.B, that *Nieves v. Bartlett*, 587 U.S. 391 (2019), created a probable-cause safe harbor for split-second police arrest decisions and does not displace *Hartman*'s framework for sustained prosecutorial and administrative retaliation over six years. Opening Br. 16. Appellees' brief never invokes *Nieves* at all, which forecloses any argument that its safe harbor applies here; the point is simply not before this Court on Appellees' own presentation.

Appellees' brief also does not address Argument III.A's point that the district court imported a summary-judgment burden-shift into the Rule 12(c) qualified-immunity analysis, requiring Arnold to identify controlling authority rather than plead facts stating a plausible violation of clearly established law under *Carswell v. Camp*, 54 F.4th 307, 313 (5th Cir. 2022). Opening Br. 14. Nor does it address Argument III.D's point that Defendants' own *Caissie* and *Moore v. City of Grand Prairie* citations, raised for the first time in their Rule 12(c) reply, cannot supply clearly established federal law because neither is Supreme Court authority, Fifth

Circuit authority, or a robust circuit consensus, and both answer questions Arnold never raised. Opening Br. 16–17. *Moore* does not even hold what Appellees cited it for: it is a Texas qualified-immunity decision about a robbery arrest, where a magistrate's warrant is background to an unrelated dispute, not a holding about municipal court authority. *Moore v. City of Grand Prairie*, No. 4:12-CV-624-A (N.D. Tex. Mar. 21, 2013).

Arnold's opening brief also invokes *Blackledge v. Perry*, 417 U.S. 21, 27–28 (1974): escalation after a defendant exercises a statutory right raises a rebuttable presumption of vindictiveness. Appellees do not mention it. Appellees' qualified-immunity argument responds to acts Arnold has not centered her claims on while leaving the retaliatory-prosecution theory, and the authority supporting it, entirely unaddressed. Qualified immunity is not a basis for affirmance on this record.

## VIII. FORFEITURE AND FUTILITY DO NOT SUPPORT DISMISSAL WITH PREJUDICE

Appellees argue that Arnold forfeited any claim to leave to amend by never filing a Rule 15(a)(2) motion below, citing *Masel v. Villarreal*, 924 F.3d 734, 749 (5th Cir. 2019). Appellee Br. 26. Arnold does not dispute that she filed no separate Rule 15 motion. But this Circuit's rule that a plaintiff

should ordinarily get one opportunity to amend before dismissal with prejudice does not depend on a separate motion where the plaintiff is pro se and the district court made no futility finding. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam). Appellees' reliance on *Great Plains* is misplaced for a further reason: this Court in *Great Plains* affirmed the denial of leave to amend because the plaintiffs there were represented by counsel and never raised the amendment issue on appeal, 313 F.3d at 329–30, a posture unlike Arnold, who raises the issue here as pro se Argument VII and who invoked *McGruder* below to have her Partial Summary Judgment record treated as the functional equivalent of an amendment. ROA.531. *McGruder* and *Great Plains* answer different questions for different litigants: one governs how a court must read a pro se plaintiff's filings, the other whether a represented plaintiff preserved an issue never raised at all.

*Bazrowx* itself found the failure to allow amendment harmless because the dismissal there was without prejudice. 136 F.3d at 1054–55. Arnold's was with prejudice, so that ameliorating factor is absent. The district court did not find futility because it could not: amendment incorporating the Partial Summary Judgment record, the AMS federal injunction, and Stuart's

own Attorney General opinions would cure any gap Appellees now identify, as set out below.

Appellees separately argue that amendment would have been futile because the dismissal rested on "purely legal" grounds that no additional pleading could change. Appellee Br. 26–27. That is Appellees' general-policymaker and advocacy-function argument restated a third time, and it fails for the same reason given in Part III above: the *Pembaur* domain-authority theory is not a purely legal question answered by statute; it is a fact question about who exercised final authority over the specific enforcement and collection decisions at issue, a question the Complaint itself already pleads (Part I above) and that the Partial Summary Judgment record and the public Attorney General opinions independently confirm. An amended complaint incorporating that record would not be futile.

Appellees' Section IV defends the magistrate's denial of Arnold's Motion to Strike Affirmative Defenses solely on *Woodfield*'s "fair notice" pleading standard. Appellee Br. 28–30. That answers only how a defense must be pleaded, not whether it is legally available at all. A ruling permitting defenses categorically foreclosed by *Owen*, *Felder*, *Patsy*, and *Monroe*, Opening Br. 28–29 (Arg. VIII.B), is "contrary to law" under Rule 72(a) regardless of deference; a legal impossibility is not within a court's

discretion. Appellees mischaracterize this as "disagreement with precedent that allows simply naming an affirmative defense." Appellee Br. 30. Arnold applies *Woodfield*'s own holding, not just its dicta: naming "accord and satisfaction" and "waiver and/or release" there fell "well short of the minimum particulars needed," *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999), the same bare-naming this Court is asked to bless for twenty defenses here. The district court's Rule 72(a) analysis addressed only *Woodfield* fair notice; it never reached whether a defense foreclosed as a matter of law is available at all. ROA.602–603.

## CONCLUSION

For the reasons above and in Arnold's opening brief, the judgment below should be reversed; Arnold's Partial Summary Judgment on the official-capacity and *Monell* claims should be granted; her Motion to Strike Affirmative Defenses should be granted; and the case remanded for further proceedings, including discovery on Stuart's individual liability for retaliatory, malicious, and vindictive prosecution.

Respectfully submitted,

/s/ Tracy Miller Arnold
Tracy Miller Arnold
Pro Se

PO Box 864
Savannah, Tennessee 38372
423-529-4335
tracy.knightswife@gmail.com

# CERTIFICATE OF SERVICE

I, Tracy Miller Arnold, certify that on August 31, 2026, I electronically filed the foregoing APPELLANT'S REPLY BRIEF with the Clerk of the United States Court of Appeals for the Fifth Circuit using the pro se email mailbox. I also served a copy via email on counsel for Appellees:

G. Todd Butler, todd.butler@phelps.com

Sonya Dickson, sonya.dickson@phelps.com

Patrick M. Judd, patrick.judd@phelps.com

Phelps Dunbar LLP

/s/ Tracy Miller Arnold

Tracy Miller Arnold

Pro Se

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts exempted by Rule 32(a)(7)(B)(iii), it contains 6,356 words.

This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it was prepared in a proportionally spaced typeface using LibreOffice Writer in Sabon 14-point font.

/s/ Tracy Miller Arnold

Tracy Miller Arnold

Dated: August 31, 2026